Jaime Quiles Hernández, peticionario, *v.* Roberto Del Valle, Alcaide Cárcel de Bayamón 501, recurrido.

*Número:* CC-2004-477    *Resuelto:* 30 de marzo de 2006

*Teodoro Méndez Lebrón*, abogado de la parte peticionaria; *Roberto J. Sánchez Ramos*, procurador general, abogado de la parte recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

Como resultado de los hechos acaecidos en el Cerro Maravilla en julio de 1978, Jaime Quiles Hernández fue acusado y convicto por seis cargos de perjurio en el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Como consecuencia de lo anterior, fue sentenciado a dos años de prisión por cada cargo, los cuales debían cumplirse consecutivamente entre sí. Posteriormente, y mientras Quiles Hernández cumplía la referida sentencia, el Departamento de Justicia del Estado Libre Asociado de Puerto Rico le sometió dos casos de asesinato y seis cargos de perjurio.

A raíz de ello, en junio de 1985 el Departamento de Corrección del Estado Libre Asociado de Puerto Rico adquirió la custodia de Quiles Hernández, quien, luego de varios trámites procesales, *hizo alegación de culpabilidad por dos casos de asesinato en segundo grado y seis de perjurio.* Así las cosas, el 18 de junio de 1987, éste fue condenado en el foro estatal a cumplir con *sentencias indeterminadas* de catorce a treinta años de prisión por los cargos de asesinato en segundo grado y de seis años en cada uno de los cargos de perjurio. *Las aludidas sentencias debían cumplirse concurrentemente entre sí, pero consecutivas con las dictadas por el tribunal federal.*

Posteriormente, el 22 de septiembre de 1987, la custodia del convicto se transfirió al Negociado de Prisiones Federales; ello con el propósito de que Quiles Hernández terminara de cumplir con las sentencias emitidas por el foro federal. Una vez cumplidas las sentencias, el 22 de junio de 1992, el Departamento de Corrección del Estado Libre Asociado de Puerto Rico reasumió la custodia de Quiles Hernández.

El *13 de noviembre de 1992*, la Junta de Libertad Bajo Palabra —en adelante la Junta— *asumió jurisdicción* sobre el caso de Quiles Hernández con el propósito de eva-

luar si éste era acreedor al beneficio de la libertad bajo palabra. Efectuada la referida evaluación, *el 11 de junio de 1993*, la Junta le *concedió* a Quiles Hernández la libertad bajo palabra.

*Casi ocho años después, específicamente el 1 de febrero de 2001*, el Departamento de Justicia del Estado Libre Asociado de Puerto Rico presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una petición para solicitar que se encarcelara a Quiles Hernández. Adujo, en síntesis, que la Junta había adquirido jurisdicción erróneamente sobre el caso de Quiles Hernández ya que acreditó, al término mínimo de reclusión necesario para que éste pudiera ser considerado para el beneficio de libertad bajo palabra, el tiempo de reclusión cumplido en la jurisdicción federal. A su vez, alegó que la actuación de la Junta fue una nula, por lo que debía ser dejada sin efecto por el foro judicial.

Luego de varios trámites procesales y de celebrar una vista en la que se evaluó los planteamientos de ambas partes, el 15 de marzo de 2001 el tribunal de instancia determinó que, en efecto, la Junta había interpretado erróneamente la Ley de Sentencias Indeterminadas. Conforme a ello, concluyó que la determinación de concederle el privilegio a Quiles Hernández fue *ultra vires* y ordenó su encarcelamiento inmediato.

Inconforme con dicha determinación, Quiles Hernández presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones, el cual fue desestimado por defectos en su notificación. Quiles Hernández recurrió, vía *certiorari*, ante este Foro. Denegamos el aludido recurso por incumplimiento con el reglamento de este Tribunal.[1]

El 8 de abril de 2003, Quiles Hernández presentó un recurso de hábeas corpus ante el Tribunal de Primera Instancia, en el que cuestionó la legalidad de su detención.

---

[1] En el entretanto, Quiles Hernández acudió ante la Junta de Libertad Bajo Palabra. El 6 de julio de 2001, la mencionada agencia emitió una resolución mediante la cual concurrió con el dictamen del foro primario.

Tras celebrar una vista, el referido foro resolvió que carecía de jurisdicción para atender el recurso presentado ya que mediante éste Quiles Hernández intentaba revisar las determinaciones previas relativas a su encarcelación. El foro de instancia determinó, además, que los planteamientos del peticionario ya habían sido adjudicados por un juez de igual jerarquía.

Inconforme con dicha determinación, Quiles Hernández acudió —mediante recurso de apelación— ante el entonces Tribunal de Circuito de Apelaciones. El referido foro, mediante sentencia emitida el 30 de abril de 2004, *confirmó* la sentencia apelada. En esencia, resolvió que el tribunal de instancia actuó correctamente al resolver que Quiles Hernández pretendía revisar la determinación previa del Tribunal de Primera Instancia que ordenó su encarcelación. Además, determinó que en este caso no existen las circunstancias excepcionales que permitan, a manera de excepción, que el recurso de hábeas corpus pueda utilizarse en sustitución de la revisión apelativa. Finalmente, determinó que a Quiles Hernández no se le violó el debido proceso de ley durante los procedimientos llevados a cabo ante el foro de instancia.

Aún inconforme, Quiles Hernández acudió —mediante un recurso de *certiorari*— ante este Tribunal. Alega que incidió el foro apelativo intermedio al

> ... confirmar la sentencia apelada dictaminando que el recurso de Habeas Corpus es improcedente porque mediante el mismo el Peticionario esta [sic] intentando revisar la decisión del Tribunal de Primera Instancia que ordenó su encarcelamiento.
> ... resolver que el encarcelamiento del Peticionario no viola los derechos que tiene este [sic] bajo el debido procedimiento de ley que le garantizan el Artículo II, Sección 7 de la Constitución del Estado Libre Asociado y la Enmienda Decimocuarta de la Constitución Federal.
> ... no resolver que la reinterpretación, por parte del Estado Libre Asociado de sus leyes y reglamentos, respecto a la forma de computar las sentencias mínimas cuando se estan [sic] cumpliendo dos o más sentencias indeterminadas viola la disposición constitucional en contra de leyes ex post facto. Petición de *certiorari*, págs. 4-5.

*Expedimos* el recurso solicitado. Contando con la posición de ambas partes y estando en posición de resolverlo, procedemos a así hacerlo.

I

■ Como es sabido, el auto de hábeas corpus es un recurso extraordinario de naturaleza civil mediante el cual una persona que está privada ilegalmente de su libertad solicita de la autoridad judicial competente que investigue la causa de su detención. *Ramos Rosa v. Maldonado Vázquez*, 123 D.P.R. 885, 889 (1989), citando a D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 2da ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, pág. 170. El auto antes mencionado está reglamentado por el Código de Enjuiciamiento Criminal y está garantizado tanto por la Constitución del Estado Libre Asociado como por la de Estados Unidos.[2]

■ En específico, este Tribunal ha establecido que un auto de hábeas corpus no procede cuando la determinación judicial que se pretenda conseguir no afecta la detención o custodia del peticionario. *Santiago Meléndez v. Rodríguez, Alguacil*, 102 D.P.R. 71, 73 (1974). Así, pues, no es suficiente que exista un mero temor de ser encarcelado, sino que es necesario que exista real y verdaderamente la prisión. *Ex parte Soldini*, 4 D.P.R. 168 (1903). El referido auto no procede, además, en los casos siguientes: cuando se intenta atacar la validez de una sentencia dictada en un procedimiento criminal; cuando el acusado está libre bajo fianza; cuando el peticionario está recluido o condenado por la orden de un tribunal de Estados Unidos, y cuando el peticionario tiene disponible el recurso de apelación. D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Ed. Programa de Educación Jurídica Continua, 1996, págs. 175–181.

---

[2] 34 L.P.R.A. secs. 1741–1780; Art. II, Sec. 13, Const. E.L.A., L.P.R.A., Tomo 1; Art. I, Sec. 9, Cl. 2, Const. EE. UU., L.P.R.A., Tomo 1.

■ De otra parte, aun cuando exista real y verdaderamente la prisión del peticionario, debe tenerse claro, al momento de evaluar un auto de hábeas corpus, que es un recurso extraordinario. En virtud de lo anterior, hemos reiterado que, *como regla general*, tienen que *agotarse* todos los *remedios ordinarios* disponibles antes de acudirse a éste. *Ortiz v. Alcaide Penitenciaría Estatal*, 131 D.P.R. 849, 861 (1992); *Reynolds v. Jefe Penitenciaría*, 90 D.P.R. 373 (1964). Cónsono con ello, el Art. 469(c) del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1741(c), establece:

> Ningún juez considerará una solicitud de *hábeas corpus* presentada por un confinado recluido *en virtud de sentencia final que no haya agotado el remedio provisto en la Regla 192.1 de Procedimiento Criminal*, Ap. II de este título. Cuando habiéndolo solicitado le hubiese sido denegado, el tribunal no considerará una solicitud de *hábeas corpus* a menos que aparezca que el remedio provisto por dicha regla era inadecuado o inefectivo para impugnar la validez de la detención. (Énfasis suplido.)

■ Como todo recurso extraordinario, el uso del auto de hábeas corpus debe limitarse a casos verdaderamente excepcionales y a situaciones que en realidad lo ameriten. *Ortiz v. Alcaide Penitenciaría Estatal*, ante, pág. 861. Por tal razón, en el pasado hemos resuelto que, *salvo circunstancias excepcionales*, no se concederá el auto de hábeas corpus en sustitución de los remedios ordinarios provistos en la ley. *Otero Fernández v. Alguacil*, 116 D.P.R. 733, 740 (1985). Esto ya que " '[l]a encuesta que sobre la legalidad de la prisión o detención lleva a cabo el juez en la vista de hábeas corpus se circunscribe a asegurarse de que se han seguido y observado trámites procesales correctos, ajustados al debido proceso de ley' ". *Otero Fernández v. Alguacil*, supra, págs. 739–740, citando a *Rabell v. Alcaides Cárceles de P.R.*, 104 D.P.R. 96, 101 (1975). En otras palabras, la norma general es denegar los autos de hábeas corpus que pretendan obviar los remedios ordinarios postsentencia

—como el trámite apelativo— *excepto cuando existan circunstancias excepcionales que ameriten su expedición.*

■ Con respecto a la determinación de la existencia o no de circunstancias excepcionales, hemos expresado que los tribunales deben evaluar, *además de la disponibilidad de un remedio efectivo para revisar en alzada el error y evitar la continuación de la detención ilegal,* factores tales como si de las alegaciones en la petición, con referencia en los hechos específicos, surge: (1) *que ha habido una patente violación a algún derecho constitucional fundamental;* (2) *que no ha habido una renuncia válida a ese derecho,* y (3) *la necesidad de una vista evidenciaria.* Véase *Otero Fernández v. Alguacil,* ante, págs. 740–741.

■ De otra parte, y al igual que en la esfera federal, hemos resuelto que la doctrina de cosa juzgada *no* es de estricta aplicación en casos de hábeas corpus. *Ramos v. Rivera,* 68 D.P.R. 548, 550 (1948); *Sanders v. United States,* 373 U.S. 1 (1963). No obstante, el Art. 469(b) del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1741, dispone que cuando en virtud de *una solicitud de hábeas corpus anterior* exista una determinación en la que se catalogue la detención como legal, ningún juez podrá ser obligado a considerar una nueva petición de hábeas corpus a menos que entienda que la nueva petición presenta nuevos fundamentos y que esté convencido de que la expedición del nuevo auto servirá los fines de la justicia.

■ Como vemos, el mencionado artículo exige, para que un juez no esté obligado a investigar nuevamente la validez de la detención de alguna persona, que exista una determinación previa de legalidad *por motivo de una solicitud de hábeas corpus anterior.* Así pues, en los casos en que *no* exista dicha determinación previa, lo *correcto* es —de haberse agotado los remedios ordinarios o, en su defecto, de existir circunstancias excepcionales— *atender el recurso y asegurarse de que la detención es legal y que se han seguido y observado los trámites procesales correctos, ajustados al debido proceso de ley.* Véanse: *Otero Fernán-*

*dez v. Alguacil*, ante, págs. 739–740; *Rabell v. Alcaides Cárceles de P.R.*, ante, pág. 101.

Habiendo expuesto el marco doctrinal pertinente al auto de hábeas corpus, procedemos a atender el primer señalamiento de error del peticionario.

A. Mediante su primer señalamiento de error, el peticionario aduce que actuaron incorrectamente tanto el Tribunal de Apelaciones como el foro de instancia al resolver que carecían de jurisdicción para atender el recurso de hábeas corpus presentado, amparándose en que su propósito era revisar la decisión del foro primario que ordenó su encarcelación. *Le asiste la razón.*

Como vimos, en el caso de autos no existió una determinación de la legalidad de la encarcelación en un recurso de hábeas corpus anterior. Según lo expresado, los tribunales inferiores erraron al determinar que carecían de jurisdicción para atender el auto, amparándose en el fundamento de que se intentaba revisar una sentencia final y firme. En este caso los planteamientos del peticionario no se atendieron en un auto de hábeas corpus anterior, sino que fueron parte del procedimiento ordinario que debe seguirse ante una solicitud de encarcelación presentada por una actuación alegadamente nula de la Junta, por lo que éste debe tener la oportunidad de cuestionar la legalidad de su encarcelación.

Ahora bien, lo anterior *no* quiere decir que automáticamente procediera el auto. Como señaláramos anteriormente, para que proceda un auto de hábeas corpus tienen que haberse agotado todos los remedios ordinarios, ya que el mencionado recurso no debe utilizarse livianamente, por ser un recurso extraordinario. Se desprende del expediente del caso de autos que el peticionario, a pesar de haber presentado un recurso de apelación ante el Tribunal Apelativo y un recurso de *certiorari* ante este Foro, para cuestionar la corrección de su encarcelación, *nunca* hizo uso del mecanismo dispuesto en la Regla 192.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, con anterioridad a la presentación

del auto de hábeas corpus, conforme lo dispone el Art. 469 del Código de Enjuiciamiento Criminal, ante. Por tal razón, debemos considerar si aplica aquí la norma general de no atender el auto hasta tanto se agoten los remedios ordinarios o si, por el contrario, existen circunstancias excepcionales que nos permitan apartarnos de dicha regla.[3]

Habida cuenta de ello y analizados los hechos particulares ante nuestra consideración, *somos del criterio de que en el caso de autos existen circunstancias excepcionales que permiten atender el recurso de hábeas corpus presentado por Quiles Hernández, aun cuando éste no utilizó el mecanismo procesal de la Regla 192.1 de Procedimiento Criminal*, ante. Ciertamente, el tiempo que Quiles Hernández estuvo en libertad bajo palabra —*casi ocho años*— unido a su comportamiento en la libre comunidad —nunca se le imputó haber violado las condiciones de su libertad— *hacen que resulte prácticamente mandatorio que la autoridad judicial evalúe la legalidad de su detención.*

Por otro lado, resulta pertinente enfatizar que el remedio al que tendría derecho el peticionario, mediante el recurso provisto por la Regla 192.1, ante, es *idéntico* al que tendría derecho, de proceder el auto de hábeas corpus presentado. Es por ello que sería, a nuestro juicio, *altamente injusto* que, años después, nos neguemos a evaluar la legalidad de su detención y determinemos que carecemos de jurisdicción sobre el auto presentado, porque no se agotó el mecanismo provisto en la regla de procedimiento

---

[3] Recordamos que "[e]l informe rendido por la Comisión de lo Jurídico del Senado de Puerto Rico, recomendando la aprobación de la citada Regla 192.1 contiene, entre otras, las siguientes expresiones:

" 'Al presente existen en nuestra jurisdicción varios recursos a través de los cuales se puede atacar la validez de una sentencia. Entre ellos el recurso de apelación, la moción para que se deje sin efecto la sentencia, el h[á]beas corpus y el auto de *coram nobis*. La Regla 192.1 armoniza estos procedimientos proveyendo para una moción mediante la cual puedan someterse al Tribunal todos los elementos de juicio necesarios para que éste pueda determinar la validez de la convicción.' ... 5 Servicio Legislativo de P.R. 592–593 (1967)." (Énfasis suprimido.) *Pueblo v. Ortiz Couvertier*, 132 D.P.R. 883, 894 esc. 11 (1993).

criminal antes mencionada.([4]) Acorde con lo anterior, resolvemos que se cometió el primer señalamiento de error.

## II

Antes de analizar los restantes señalamientos de error, consideramos pertinente evaluar la validez, o nulidad, de la actuación de la Junta al asumir jurisdicción sobre el caso de Quiles Hernández utilizando, para computar el término mínimo cumplido por éste, el tiempo que cumplió de las sentencias federales consecutivas que le fueron previamente impuestas.

Como se sabe, la Ley Núm. 295 de 10 de abril de 1946, según enmendada, 1946 Leyes de Puerto Rico 759,([5]) entre otras cosas, proveía para el establecimiento de sentencias indeterminadas en Puerto Rico.([6]) En esencia, dicha ley disponía que los tribunales ordenarían la reclusión del convicto por un término que no podría ser en ningún caso menor que el término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señalara para dicho delito.

Treinta y cuatro años después, la Asamblea Legislativa derogó la Ley Núm. 295, ante, y aprobó la Ley de Sentencia Determinada de Puerto Rico, 1980 Leyes de Puerto Rico

---

([4]) Adelantamos que, en la discusión del segundo señalamiento de error, abundaremos sobre las circunstancias especiales existentes en el caso de autos.

([5]) En lo pertinente, el Art. 1 de dicha ley *establecía* que:

"Por la presente se establece la sentencia indeterminada en Puerto Rico; *Disponiéndose*, que, cuando los tribunales condenaren a un reo a cumplir sentencia por delito grave, que no apareje pena de reclusión perpetua, fijarán una sentencia indeterminada y no fijarán límite específico de duración de la sentencia, sino que ordenarán la reclusión del reo por un término que no podrá ser en ningún caso menor que el término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señala para dicho delito; *Disponiéndose, además*, que en aquellos casos en que la ley no disponga término mínimo o máximo, el tribunal sentenciador fijará dicho término mínimo o máximo." (Énfasis en el original.) 1946 Leyes de Puerto Rico 759.

([6]) *Es menester destacar que Quiles Hernández fue sentenciado estando en vigor esta ley.*

297.(⁷) A pesar de dicho cambio estatutario, se estableció —y todavía esta es la norma que rige— que la elegibilidad de los casos para la consideración de la Junta *sobre cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico se determinará según las disposiciones de la ley bajo la cual fue convicto.*(⁸) Así, las personas convictas bajo la Ley de Sentencias Indeterminadas estarían bajo la jurisdicción de la Junta, según los términos establecidos en ésta.

■ En vista de ello, es preciso señalar que la aludida Ley Núm. 295, ante, según enmendada por la Ley Núm. 117 de 26 de junio de 1961,(⁹) establecía que la Junta podía asumir jurisdicción sobre el caso de cualquier persona que estuviese cumpliendo una sentencia indeterminada, cuando *ésta hubiese cumplido su término mínimo.* De igual forma, *en los casos de sentencias consecutivas o concurrentes de reclusión, el convicto debería cumplir un periodo igual al mínimo más largo para que la Junta pudiera asumir jurisdicción sobre su caso.* Dicho de otra manera, la Junta *no* tendrá jurisdicción sobre los casos de confinados que, cumpliendo una o más sentencias indeterminadas, no hayan cumplido su término mínimo, o el mínimo más largo de ser dos o más sentencias consecutivas o concurrentes.(¹⁰)

■ Es de notar que, tanto las disposiciones relativas a las sentencia indeterminadas como las concernientes a la

---

(⁷) Véase la Ley Núm. 100 de 4 de junio de 1980 (1980 Leyes de Puerto Rico 297–298).

(⁸) Véase 4 L.P.R.A. sec. 1504:

"La elegibilidad de los casos para consideración por la Junta, en cuanto a libertad bajo palabra, de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico, que hubiere sido o fuere convicta por delitos cometidos con anterioridad a la fecha de vigencia de la ley que establece el Sistema de Sentencia Determinada en Puerto Rico, se determinará a tenor con las disposiciones de la ley que establece la sentencia indeterminada en Puerto Rico...."

(⁹) 1961 Leyes de Puerto Rico 271–272.

(¹⁰) Véase, además, la Sec. 6.2 del Reglamento Núm. 3570 de la Junta de Libertad Bajo Palabra de 26 de agosto de 1987, derogado por el Reglamento de la Junta de Libertad Bajo Palabra de 29 de agosto de 2004. Es menester aclarar que la Sec. 6.2 de ambos reglamentos es virtualmente idéntica.

jurisdicción de la Junta *guardan silencio en torno a la posibilidad de que el término cumplido por un confinado en una sentencia federal, consecutiva a una estatal, pueda acreditársele como tiempo cumplido en esta última para los efectos de que la mencionada entidad pudiera asumir jurisdicción sobre su caso.*

Ante el silencio legislativo, *sostenemos que la actuación original de la Junta en el caso de autos, en 1992, fue incorrecta.* Somos del criterio de que resolver lo contrario sería dar al traste con la razón de ser de las sentencias consecutivas y con la intención legislativa de que las personas convictas cumplan un mínimo de su sentencia, antes de poder ser acreedoras de la libertad bajo palabra. Veamos por qué.

■  Como se sabe, las sentencias se cumplen de forma consecutiva cuando una sentencia no empieza a cumplirse hasta terminada la otra; esto es, el convicto sólo empieza a cumplir una sentencia tras extinguir la anterior. La determinación judicial de sentencias consecutivas o concurrentes no sólo se produce en casos de acumulación de delitos contra un acusado, sino que también se produce cuando el convicto está extinguiendo o va a cumplir una sentencia anterior. E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1993, Vol. III, págs. 558–559. No obstante, dicha determinación descansa en la sana discreción del tribunal sentenciador, excepto por las instancias dispuestas por la Regla 180 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.([11])

---

([11]) Dicha disposición expresa lo siguiente:

*"Términos que no podrán cumplirse concurrentemente*

"No podrán cumplirse concurrentemente los términos de prisión que deban imponerse en los siguientes casos:

"(a) Cuando el reo fuere sentenciado por delito cometido mientras estuviere bajo apelación de otra causa o causas o mientras estuviere en libertad por haberse anulado los efectos de una sentencia condenatoria.

"(b) Cuando el reo estuviere recluido o tuviere que ser recluido por sentencia a prisión en defecto de pago de cualquier multa impuéstale.

"(c) Cuando el reo cometiere el delito mientras estuviere recluido en una institución penal o cumpliendo cualquier sentencia.

En el caso de autos, el tribunal sentenciador dispuso, específicamente, que las sentencias estatales *fueran consecutivas* con las federales que cumplía el peticionario. Al así disponer, dicho foro pretendió que el término cumplido en la jurisdicción federal *no se considerara como tal para los efectos del cumplimiento de la sentencia estatal.* Ciertamente, sería *incongruente* con dicho propósito resolver que el término cumplido en la jurisdicción federal se podía acreditar para los efectos de concederle jurisdicción a la Junta sobre el caso hoy ante nuestra consideración.

En vista de lo anteriormente expresado, *resolvemos que la Junta no puede utilizar el tiempo cumplido por un confinado en una sentencia de otra jurisdicción —consecutiva a una local— para calcular el tiempo mínimo que éste debe cumplir antes de poder ser acreedor al beneficio de la libertad a prueba.*

Procede, *sin embargo*, atender y resolver los restantes señalamientos de error del peticionario Quiles Hernández.

### III

En su segundo señalamiento de error, el peticionario sostiene que el encarcelamiento del que fue objeto violó su derecho al debido proceso de ley. Esencialmente, Quiles Hernández cuestiona el hecho de que en su caso no se utilizara el procedimiento establecido en la ley para los casos de revocaciones de la libertad bajo palabra. *No le asiste la razón.*

▆ Como se sabe, en Puerto Rico, el sistema de libertad bajo palabra está regulado por la Ley Núm. 118 de

---

"(d) Cuando el reo cometiere delito mientras estuviere en libertad bajo palabra o bajo indulto condicional o bajo cualquier medida de liberación condicional en la cual se le considerare cumpliendo la sentencia impuesta por el tribunal.

"(e) Cuando el reo fuere sentenciado por delito cometido mientras estuviere en libertad bajo fianza, acusado por la comisión de delito grave.

"(f) Cuando el reo fuere sentenciado por delito grave o menos grave, según se tipifican en la sec. 4248 del Título 33." 34 L.P.R.A. Ap. II.

22 de julio de 1974 (4 L.P.R.A. sec. 1501 *et seq.*). Este sistema

> ... permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad. *Maldonado Elías v. González Rivera*, 118 D.P.R. 260, 275 (1987).

Es importante señalar que el beneficio de la libertad bajo palabra *no* es un derecho reclamable, *sino un* privilegio cuya concesión y administración recae en el tribunal o en la Junta. *Pueblo v. Negrón Caldero*, 157 D.P.R. 413 (2002); *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530, 536 (1999); *Pueblo v. Molina Virola*, 141 D.P.R. 613 (1996).

A pesar de lo anterior, hemos resuelto que la persona que goza del beneficio de la libertad bajo palabra tiene una libertad condicionada o cualificada *que representa un interés de suficiente valor como para exigir las garantías mínimas del debido proceso de ley cuando se le intente despojar de éste.* Véanse: *Maldonado Elías v. González Rivera*, ante; *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717, 723 (1985).

No obstante, dichas garantías procesales no se equiparan, totalmente, a las que tiene todo acusado en un procedimiento criminal, ya que, entre otras cosas, la libertad conferida condicionalmente "no goza de la magnitud ni del grado de la que disfruta un ciudadano común". *Martínez Torres v. Amaro Pérez*, ante, pág. 723. El Estado ya probó la culpabilidad del convicto más allá de duda razonable. *Maldonado Elías v. González Rivera*, ante, pág. 266. Ahora bien, se han establecido varias *garantías mínimas* que se deben ofrecer en los casos de revocación de libertad bajo palabra. Estas son: (1) una vista preliminar para determinar si hay causa probable para creer que el liberado ha violado las condiciones de la libertad bajo palabra, y (2) una vista final antes de la decisión definitiva sobre si la libertad bajo palabra será revocada. *Maldonado*

*Elías v. González Rivera*, ante, pág. 265; *Martínez Torres v. Amaro Pérez*, ante, pág. 725.

Las mencionadas garantías fueron estatuidas por la Legislatura mediante la Ley Núm. 2 de 26 de febrero de 1987, la cual enmendó el Art. 5 de la Ley Núm. 118 (4 L.P.R.A. sec. 1505), para proveer un procedimiento de revocación que satisficiera los requisitos constitucionales mínimos del debido proceso de ley, según establecidos por el Tribunal Supremo federal. Véanse: *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *Morrisey v. Brewer*, 408 U.S. 471 (1972). En dicho procedimiento, entre otras cosas,

> [s]e reconoce el derecho del liberado a notificación de las alegadas infracciones a las condiciones de la libertad bajo palabra; el derecho a comparecer y presentar evidencia a su favor; confrontar y contrainterrogar testigos adversos; el derecho a que la decisión de revocación sea tomada por un juzgador neutral e independiente y a que se hagan determinaciones escritas de los hechos hallados probados, así como de la evidencia en que la decisión se basó y las razones para revocar la libertad bajo palabra. *Ortiz v. Alcaide Penitenciaría Estatal*, 131 D.P.R. 849, 859 (1992).

No obstante, y además del procedimiento dispuesto en el Art. 5 antes mencionado, el Estado puede impugnar judicialmente una determinación errónea de concesión de libertad condicionada. Así lo dispusimos en *Emanuelli v. Tribl. de Distrito*, 74 D.P.R. 541, 549 (1953), al expresar lo siguiente:

> Una actuación nula de la Junta, concediendo la libertad bajo palabra, no surte efecto legal alguno, y en cualquier momento, bien en *hábeas corpus* si el confinado intentare hacer valer sus derechos bajo dicha actuación, o bien mediante solicitud —como en este caso— para que se expida orden de encarcelación si se le hubiere excarcelado en virtud de aquélla, *puede dicha actuación ser impugnada judicialmente,* sin que obste para ello la ausencia de en el estatuto de disposiciones sobre revisión judicial. (Énfasis suplido y citas omitidas.)

Lo anterior significa que cuando exista una actuación *ultra vires* de la Junta —como lo sería una concesión del privilegio a un confinado sobre el cual no tiene

jurisdicción— no se tiene que utilizar necesariamente el mecanismo provisto para la revocación de la libertad bajo palabra, *sino que en cualquier momento se podrá utilizar la vía judicial para dejar sin efecto dicha actuación.*

En el caso de autos, surge del expediente que disfrutando el peticionario del beneficio de la libertad a prueba, el Departamento de Justicia se percató de que la Junta había cometido un error al asumir jurisdicción sobre el caso del peticionario y —conforme lo establecido en *Emanuelli v. Tribl. de Distrito*, ante— presentó ante el foro primario, y notificó al peticionario, una moción para su encarcelación. Dicho foro, luego de celebrar una vista y escuchar los planteamientos de las partes tanto orales como escritos, determinó que, en efecto, la actuación de la Junta fue sin jurisdicción y ordenó el encarcelamiento inmediato del peticionario.

A raíz de los hechos antes mencionados, *resulta claro que a Quiles Hernández se le concedieron todas las garantías mínimas del debido proceso de ley antes de ser ordenada su encarcelación.* Se le notificó de la moción de encarcelación, se celebró una vista en la que tuvo la oportunidad de ser escuchado y de contrainterrogar a los testigos adversos. De igual forma, pudo presentar por escrito los fundamentos por los cuales entendía que no procedía su encarcelación y la decisión en su contra fue tomada por un juzgador imparcial. Así pues, es menester *concluir* que el trámite seguido para lograr el encarcelamiento de Quiles Hernández fue correcto y se cumplieron las garantías mínimas del debido proceso de ley.

*No obstante lo anterior, existe una situación excepcional que amerita nuestra atención y especial consideración.*

■ A. Sabido es que los errores administrativos *no* crean derechos y pueden ser corregidos en cualquier momento por el Estado. *Santiago v. Depto. de la Familia*, 153 D.P.R. 208, 218 (2001). Conforme a ello, hemos resuelto que una parte no puede pretender ampararse en una actuación administrativa incorrecta. *González v. E.L.A.*, 167

D.P.R. 401 (2006); *Magriz v. Empresas Nativas*, 143 D.P.R. 63, 71 (1997); *Del Rey v. J.A.C.L.*, 107 D.P.R. 348, 355–356 (1989).

■ Por otro lado, es norma reiterada que las doctrinas de actos propios y *estoppel, de ordinario*, no aplican contra el Estado cuando hay de por medio una cuestión de interés público implicada. *Mendoza Aldarondo v. Asociación Empleados*, 94 D.P.R. 564 (1977); *Infante v. Tribl. Examinador Médicos*, 84 D.P.R. 308, 316–317 (1961); *Vives v. La Junta de Farmacia*, 24 D.P.R. 669 (1916). Véase, además, D.K. Thompson, *Equitable Estoppel of the Government*, 79 Colum. L. Rev. 551 (1979).[12]

■ No obstante, con el pasar de los años tanto en Puerto Rico[13] como en diversas jurisdicciones norteamericanas,[14] *se ha reconocido que en situaciones en las que no se afecte el interés público y en las que pueda ocurrir una clara injusticia, las doctrinas como la de los actos propios o "equitable estoppel" pueden ser utilizadas contra el Estado.* Específicamente en *Berríos v. U.P.R.*, 116 D.P.R. 88 (1985), expresamos que "en nuestra jurisdicción es aceptable la norma de que bajo circunstancias apropiadas, un demandante puede invocar contra el Estado la doctrina de actos propios, impedimento en equidad y de la buena fe". Véase, además, *Morales v. Municipio de Toa Baja*, 119 D.P.R. 682 (1987). Asimismo, en *Johnson v. Williford*, 682 F.2d 868 (9no Cir. 1982), la Corte Federal de Apelaciones de Estados Unidos para el Noveno Circuito le aplicó la doctrina de "equitable estoppel" al Gobierno en un caso en el

---

[12] Véase, también, *O.P.M. v. Richmond*, 496 U.S. 414, 423–424 (1990), donde el Tribunal Supremo federal se negó a atender la controversia específica sobre si le aplica al Gobierno la doctrina de *estoppel*.

[13] Véanse: *Carazo v. Srio. de Hacienda*, 118 D.P.R. 306 (1987); *Berríos v. U.P.R.*, 116 D.P.R. 88 (1985); *Figueroa Cancel v. E.L.A.*, 114 D.P.R. 684 (1983); *García Colón v. Srio. de Hacienda*, 99 D.P.R. 779 (1971).

[14] Véanse: *Salgado-Diaz v. Ashcroft*, 395 F.3d 1158 (9no Cir. 2005); *Johnson v. Williford*, 682 F.2d 868 (9no Cir. 1982); *United States v. Lucienne D'Hotelle*, 558 F.2d 37 (1er Cir. 1977); *Corniel-Rodriguez v. I.N.S.*, 532 F.2d 301 (2do Cir. 1976); *United States v. Lazy FC Ranch*, 481 F.2d 985 (9no Cir. 1973); *Walsonavich v. United States*, 335 F.2d 96 (3er Cir. 1964); *Tuck v. Finch*, 430 F.2d 1075 (4to Cir. 1970).

que la persona había sido convicta por un delito para el cual no estaba asequible el beneficio de la libertad bajo palabra. No obstante ello, la Comisión de Libertad Bajo Palabra del "Northern District" de Florida, sin percatarse de que éste no tenía derecho a la libertad condicionada, le concedió la libertad bajo palabra. Aproximadamente *quince meses* después la Comisión se percató del error que había cometido, por lo que revocó la libertad bajo palabra que le había concedido.

A raíz de ello, Johnson presentó un auto de hábeas corpus, el cual luego de ser concedido por el tribunal de distrito, posteriormente fue apelado ante la Corte de Apelaciones. Ésta, después de analizar la viabilidad de la aplicación de la doctrina de *estoppel* al Gobierno, *confirmó* el dictamen recurrido por entender que las actuaciones de la Comisión crearon en Johnson una "expectativa de libertad" si cumplía las condiciones que le fueron impuestas. *Johnson v. Williford*, ante, págs. 871–872. Además, el mencionado foro expresó que las actuaciones, tan erróneas y negligentes de la comisión atentaron contra los principios fundamentales de libertad y justicia, por lo que la encarcelación de Johnson también violaría su debido proceso de ley. Íd., págs. 873–874.

Resulta pertinente *enfatizar* que, luego de analizar varios precedentes jurisprudenciales, en *Johnson v. Williford*, ante, el Noveno Circuito sostuvo: "*… where justice and fair play require it, estoppel* will be applied against the government even when the government acts in its sovereign capacity *if the effects of estoppel do not unduly damage the public interest.*" (Énfasis suplido.) *Johnson v. Williford*, ante, pág. 871.

Aun cuando los hechos en este caso son parecidos a los de *Johnson v. Williford*, ante,([15]) en el caso de epígrafe

---

([15]) La Junta de Libertad Bajo Palabra, en el caso que hoy ocupa nuestra atención, ordenó la encarcelación de una persona que observó una conducta conforme a las condiciones que le fueron impuestas durante ocho largos años, actuación que

existe una situación particular que *hace innecesario* expresarnos sobre su aplicación a éstos. *Nos referimos al hecho de que Quiles Hernández cumplió el término mínimo de la sentencia que le fuera impuesta por el foro estatal el 20 de mayo de 2000;*([16]) esto es, *ocho meses antes de que el Departamento de Justicia solicitara la revocación de la libertad bajo palabra que le fuera concedida.* Desde esa fecha, en consecuencia, *la Junta tiene jurisdicción sobre Quiles Hernández.*

En vista a esa situación, somos del criterio que ante los hechos particulares de este caso, el curso de acción a seguir —justo y correcto— *es dejar sin efecto la sentencia emitida por el Tribunal de Apelaciones*([17]) *y devolver el caso directamente a la Junta de Libertad Bajo Palabra para que ésta, en un término no mayor de noventa días, asuma jurisdicción sobre el caso de Jaime Quiles Hernández, celebre las vistas correspondientes y necesarias, y resuelva si Quiles Hernández amerita ser recipiente del privilegio de una libertad bajo palabra.*([18])

*Se dictará sentencia de conformidad.*

La Jueza Asociada Señora Fiol Matta disintió sin opinión escrita. Los Jueces Asociados Señor Fuster Berlingeri y Señora Rodríguez Rodríguez se inhibieron.

---

pudiéramos catalogar como altamente perjudicial para Quiles Hernández y que, de permitirla, propiciaría la comisión de una gran injusticia en su contra.

([16]) Este hecho forma parte de las determinaciones de hecho que hiciera el foro de instancia; ello a base del testimonio del Sr. Ronald Golderos Caballeros, jefe de técnicos de expedientes penales de la Administración de Corrección.

([17]) Debido al resultado al que hemos llegado, resulta innecesario atender el tercer señalamiento de error.

([18]) *Al atender, y resolver, dicha encomienda la Junta de Libertad Bajo Palabra deberá tomar en consideración los hechos siguientes,* a saber: que la conducta observada por Quiles Hernández, mientras estuvo en prisión y antes de que erróneamente se le concediera la libertad bajo palabra en 1992, fue excelente; que durante los ocho años que estuvo disfrutando de libertad bajo palabra —de 1992 al 2000— su conducta fue intachable, y que, desde que fue reingresado en el 2000 hasta el presente, su conducta en prisión ha sido igualmente excelente. *De lo anteriormente expresado, se puede inferir que, actualmente, Quiles Hernández no representa peligro alguno para la ciudadanía puertorriqueña.*