ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| ERNESTO ROSADO ROSADO  Recurrente  v.  JUNTA DE LIBERTAD BAJO PALABRA  Recurrido | KLRA202300655 | *REVISIÓN JUDICIAL* procedente de la Junta de Libertad Bajo Palabra  Caso Núm.: 145789  Querella Núm.: 23-072  Sobre: Vista Final Revocación de libertad bajo palabra |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2024.

Comparece la parte recurrente, el señor Ernesto Rosado Rosado (señor Rosado Rosado o recurrente), quien solicita nuestra intervención para dejar sin efecto la *Resolución* de la parte recurrida, la Junta de Libertad Bajo Palabra (Junta o recurrida), emitida el 17 de noviembre de 2023 y notificada el día 21 siguiente.[1] El ente administrativo emitió una *Resolución* en el caso del título, por virtud de la cual revocó el privilegio de libertad bajo palabra del recurrente, al concluir que éste transgredió las Condiciones 9 y 12 del *Certificado de Libertad Bajo Palabra Enmendado* (Mandato).

Por los fundamentos que expondremos, confirmamos la decisión administrativa.

**I.**

Surge del expediente que el señor Rosado Rosado fue condenado a cumplir una sentencia de reclusión por la comisión de varios delitos graves, entre éstos una violación al Artículo 3.3 de la Ley Núm. 54, *Ley para la Prevención e Intervención con la Violencia Doméstica*, sobre *Maltrato mediante amenaza*. No obstante, desde el

---

[1] Apéndice del recurso, págs. 24-29.

Número Identificador

SEN2024 _____

12 de octubre de 2022, la Junta le concedió a la parte recurrente la libertad bajo palabra, la cual fue ratificada el 4 de febrero de 2023.[2] Entre las condiciones impuestas para disfrutar del privilegio se encontraban las siguientes, a las que hemos impartido énfasis:[3]

**9.** Observará **buena conducta** en la comunidad. **Se abstendrá de cometer hechos** o incurrir en omisiones **que constituyen delitos** de acuerdo con las leyes de los Estados Unidos de América, las leyes de Puerto Rico u ordenanzas municipales, y cumplirá éstas y los decretos administrativos de las agencias del gobierno.

. . . . . . . .

**12. La Junta de Libertad Bajo Palabra podrá** decretar la suspensión indefinida de su libertad bajo palabra en la comunidad y **ordenar su reingreso**, en cualquier institución apropiada del gobierno, **cuando, a juicio de la Junta de Libertad Bajo Palabra**, **considerare** que el otorgarle el privilegio de libertad bajo palabra, en su caso, **fuere incompatible con el bienestar público, con su propio bienestar o seguridad, el de sus familiares o con personas con quien conviviere**.

Así las cosas, el 29 de agosto de 2023, la Técnico de Servicio Sociopenal (TSS) Wanda Rivera Vélez suscribió el *Informe de Situación*.[4] En el documento, la TSS reveló que D.M.C. —expareja consensual del recurrente y quien a esa fecha se encontraba en el quinto mes de gestación— le indicó su deseo de que el señor Rosado Rosado se marchara del hogar. D.M.C. narró que el recurrente la "tiró por unas escaleras porque le fue a reclamar qu[é] hacía fuera de la casa y ella le dijo que estaba tomando el aire natural".[5] Añadió que el recurrente constantemente la insultaba. Explicó que no acudió a las autoridades, ni a recibir asistencia médica, porque "no recibió ningún golpe fuerte y se [encontraba] bien".[6] El señor Rosado Rosado negó los hechos imputados y propuso otra vivienda para establecer el sistema de monitoreo electrónico. En ese momento, se estableció la permanencia de un *lock down*.

---

[2] Apéndice del recurso, págs. 30-32.
[3] Apéndice del recurso, págs. 33-34.
[4] Apéndice del recurso, págs. 35-36.
[5] Véase, Apéndice del recurso, pág. 35.
[6] *Id.*

Por su parte, el 29 de agosto de 2023, D.M.C. solicitó una orden de protección *ex parte* al palio de la Ley Núm. 54. En el formulario se expuso lo siguiente:

> LAS PARTES TIENEN UNA RELACIÓN DE PAREJA HACE DOS AÑOS. LA PARTE PETICIONARIA ESTÁ EMBARAZADA, TIENE 5 MESES DE EMBARAZO. LA PARTE PETICIONARIA ES VÍCTIMA DE UN PATRÓN PSICOLÓGICO DE VIOLENCIA DOMÉSTICA. EL PETICIONADO LA INSULTA CONSTANTEMENTE Y LE QUIERE CONTROLAR LA VIDA. EL PETICIONADO HA AGREDIDO FÍSICAMENTE EN EL ROSTRO. LA PETICIONARIA TEME POR SU SEGURIDAD Y LA DE LA HIJA QUE ESTÁ EN SU VIENTRE. SE EXPIDE ORDEN DE PROTECCIÓN FINAL Y SE CITAN LAS PARTE PARA VISTA FINAL EL 19 DE SEPTIEMBRE A LAS 11:00 AM. SE ORDEN[A] EL DESALOJO.[7]

A tales efectos, el 30 de agosto de 2023, la Junta emitió una *Orden* para el arresto, retención o requisitoria del señor Rosado Rosado, por la violación de las Condiciones 9 y 12 antes transcritas.[8] Además se citó al recurrente a una vista sumaria inicial el 1 de septiembre de 2023.[9] En ambos documentos, se consignaron los alegados hechos transgresores:

> Surge del informe de situación suscrito por la TSS, encargada del caso Wanda E. Rivera Vélez que el 27 de agosto de 2023, el liberado - querellado tiró a su compañera consensual por unas escaleras luego de reclamarle el por qué estaba fuera de la casa.
>
> La compañera consensual se encuentra en su quinto mes de gestación.
>
> A raíz de estos hechos la compañera consensual del liberado - querellado solicitó y se expidió una orden de protección ex parte contra el liberado - querellado en el Tribunal de Instancia de Utuado la cual fue expedida junto a una orden de desalojo y se citó a las partes para vista final el 19 de septiembre de 2023.
>
> Ante la incomparecencia de la TSS y a petición de la representación legal del recurrente, la vista sumaria inicial y la final

---

[7] Refiérase, Apéndice del recurso, págs. 32-41. En específico, véase, Apéndice del recurso, pág. 39.

[8] Apéndice del recurso, págs. 42-45. El 30 de agosto de 2023, el señor Rosado Rosado fue encarcelado en la Institución Correccional Bayamón 705. Véase, Apéndice del recurso, pág. 49, acápite 4.

[9] Apéndice del recurso, págs. 46-48.

se consolidaron para el 5 de octubre de 2023.[10] Llegado el día, la Oficial Examinadora, Marie J. Díaz Valcárcel, presidió los procedimientos y el día 23 siguiente rindió el *Informe del Oficial Examinador*.[11] Previo a estas fechas, específicamente el 19 de septiembre de 2023, D.M.C. había informado al Tribunal de Primera Instancia su desistimiento voluntario de la orden de protección. En consecuencia, el foro compelido emitió una *Resolución sobre archivo*.[12] La Oficial Examinadora consignó el hecho en su escrito. Además, expuso que la TSS estuvo conteste con la solicitud de la representación legal del señor Rosado Rosado en cuanto a concederle una oportunidad a éste, siempre y cuando, la nueva vivienda fuera viable, no contacte a D.M.C. y provea manutención.[13] En suma, la Oficial Examinadora concluyó que el señor Rosado Rosado infringió la Condición 9 y desestimó la violación de la Condición 12 imputada. Por consiguiente, amonestó al recurrente, lo apercibió del cumplimiento de las Condiciones impuestas en el Mandato, ordenó su excarcelación y que se sometiera a tratamiento sicológico.

Por su parte, la Junta no acogió la recomendación de las funcionarias. En la *Resolución* aquí impugnada ponderó los hechos y expuso las siguientes aseveraciones fácticas:

> 1. Las condiciones antes indicadas son parte del Mandato, expedido a favor del querellado el 12 de octubre de 2022 y firmado por éste. Cumple una sentencia de veintiún (21) años, cuatro (4) meses y un (1) día por violación al Art. 108 (Asesinato Atenuado), al Art. 201 (Recibo, disposición y transportación de bienes objeto de delito) y al Art. 188 (Amenazas) del entonces vigente Código Penal de 2004, según enmendado; violación a los Arts. 5.04 (Portación y uso de armas de fuego sin licencia) y 5.15 (Disparar o apuntar armas) de la entonces vigente Ley Núm. 404 del 11 de septiembre de 2000, conocida como la "Ley de Armas de Puerto Rico"; y violación al Art. 3.3 (Maltrato mediante amenaza) de la Ley Núm. 54 del 15 de agosto de 1989, según enmendada, conocida como la "Ley para la Prevención e

---

[10] Apéndice del recurso, págs. 49-52; en particular, véase, Apéndice del recurso, pág. 50, acápite 7.
[11] Apéndice del recurso, págs. 53-57.
[12] Apéndice del recurso, págs. 58-59.
[13] Véase, Apéndice del recurso, pág. 54, acápite 8.

Intervención con la Violencia Doméstica". Finaliza, tentativamente, la sentencia el 16 de octubre de 2029.

2. La compañera consensual del querellado se presentó a la oficina del Programa de Comunidad del DCR[14] e indicó a la TSS, entre otras cosas, que tenía desacuerdos con el querellado y no lo quería en su casa. Le informó que el querellado constantemente la insultaba. Además, le expresó que, el 27 de agosto de 2023, el querellado la tiró por las escaleras (la compañera tiene 5 meses de gestación). La TSS informó que orientó a la pareja del querellado respecto a que podía presentar una denuncia contra éste y debía ir al médico debido a su caída. No obstante, la compañera expresó que sólo quería que el querellado saliera de su casa, no tenía interés en denunciarlo y no recibió ningún golpe fuerte a consecuencia de la caída. Expresó que se encontraba bien. La TSS también le orientó en torno a que podía solicitar una Orden de Protección y la refirió a la Sala Especializada de Violencia Domestica del TPI.

3. El 29 de agosto de 2023, el TPI expidió una Orden de Protección *Ex Parte* mediante la cual, entre otras cosas, ordenó al querellado desalojar la residencia que compartía con su compañera consensual y señaló una vista para el 19 de septiembre de 2023.

4. El querellado fue trasladado inmediatamente a la residencia de su jefe, ubicada en la Calle Carlos #31 en Utuado, P.R. Además, se estableció "Lock Down", hasta que se determinara lo contrario por la Junta.

5. El TPI archivó la Orden de Protección *Ex Parte* dado al desistimiento de voluntario de la víctima, quien era pareja del querellado.

6. El querellado fue removido del hogar por precaución. Luego de la vista del 19 de septiembre de 2023, la TSS llamó a la pareja del querellado en varias ocasiones. No obstante, ésta no le contestó dichas llamadas telefónicas.

7. La representación legal solicitó a la Junta de que le diera una oportunidad a su representado ya que éste estaba cumpliendo con las condiciones de su Mandato y esta situación fue una aislada. Además, argumentó que la Orden de Protección no procedió. Indicó que podía someter una nueva dirección para que su representado continuara cumpliendo con el privilegio de libertad bajo palabra.

8. La TSS recomendó que, de concedérsele una oportunidad al querellado, se le ordenara una nueva vivienda viable al querellado y se le ordenara no tener contacto con la pareja. Asimismo, solicitó que, llegado el momento del nacimiento de la bebé, el querellado realizara las gestiones para la manutención de su hija con visitas supervisadas.

---

[14] Siglas de Departamento de Corrección y Rehabilitación.

Conforme a los hechos, la Junta coligió que la conducta del señor Rosado Rosado contra D.M.C., en efecto, violó las Condiciones 9 y 12 establecidas en el Mandato. Aun cuando el ente impugnado consideró que la orden de protección fue desistida voluntariamente, expresó que **no se presentó prueba en contrario a las alegaciones realizadas por D.M.C. a la TSS**. Añadió que, incluso, la funcionaria aconsejó que entre el recurrente y D.M.C. no existiera contacto y, en su día, las relaciones paternofiliales fueran supervisadas. En fin, la Junta concluyó que el señor Rosado Rosado observó una conducta inapropiada y que su proceder constituía un riesgo para él y la comunidad. Justipreció que los hechos cometidos por parte del recurrente eran incompatibles con el bienestar público, el suyo, el de sus familiares y el de las personas con quien convivía. Expresó que el señor Rosado Rosado demostró poco compromiso con su proceso de rehabilitación, ya que la conducta desplegada fue similar a los delitos por los cuales cumplía sentencia. Consecuentemente, declaró No Ha Lugar la solicitud para que el señor Rosado Rosado continuara disfrutando del privilegio de libertad bajo palabra y devolvió su custodia al Departamento de Corrección y Rehabilitación.

Inconforme, el señor Rosado Rosado acudió oportunamente ante este foro revisor y señaló la comisión de los siguientes errores:

**PRIMER ERROR**
Erró el foro administrativo al revocar el privilegio de libertad bajo palabra concedido al liberado Ernesto Rosado Rosado aun cuando la Técnica Socio-penal y la Oficial Examinadora que presidió la vista final consolidada y aquilató la prueba recomendaron que éste continuara bajo el privilegio de libertad bajo palabra con monitoreo electrónico.

**SEGUNDO ERROR**
Erró el foro administrativo al revocar el privilegio de libertad bajo palabra concedido al liberado Ernesto Rosado Rosado cuando la totalidad de la prueba presentada no sostiene una violación patente a las condiciones establecidas en su mandato, esto en claro abuso de discreción.

Acordamos eximir a la parte recurrida de presentar su alegato en oposición, en armonía con la Regla 7 (B) (5) de nuestro Reglamento. Como se conoce, la norma provee para que este Tribunal de Apelaciones prescinda de "términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos", ello "con el propósito de lograr su más justo y eficiente despacho". 4 LPRA Ap. XXII-B, R. 7 (B) (5). Resolvemos.

## II.

### *La revisión judicial*

Es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos ejecutivos y municipales para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". (Énfasis nuestro). *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente administrativo haya obrado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En

torno a esto, en *Torres Rivera v. Policía de PR, supra,* el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Torres Rivera v. Policía de PR, supra,* pág. 628.

Así, pues, es norma asentada que el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v. AFI y otro, supra,* pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra,* pág. 127; *Torres Rivera v. Policía de PR, supra,* pág. 626; *Empresas Loyola v. Com. Ciudadanos,* 186 DPR 1033, 1042-1043 (2012). Por lo tanto, intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra,* pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra,* pág. 127; *Rolón Martínez v. Supte. Policía, supra.*

### *El privilegio de la libertad bajo palabra*

La Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1501 *et seq.* (Ley Núm. 118), creó la Junta de Libertad Bajo Palabra. El ente administrativo está facultado para conceder el privilegio de cumplir la última parte de una condena en libertad bajo palabra a cualquier persona recluida en una institución correccional de Puerto Rico. *Benítez Nieves v. ELA et al.,* 202 DPR 818, 825 (2019). Al ejecutar la potestad delegada, **la Junta está autorizada a imponer las**

**condiciones que estime necesarias para la concesión del beneficio privilegiado**. Art. 3 de la Ley Núm. 118, 4 LPRA sec. 1503. Claro está, dichas condiciones restrictivas se suman a las restricciones que, de ordinario, el ciudadano común está obligado a observar en nuestra jurisdicción. *Benítez Nieves v. ELA et al.*, *supra*, que cita a *Morrissey v. Brewer*, 408 US 471, 478 (1972). Ello responde a que el beneficio de la libertad bajo palabra es considerado un privilegio, no un derecho reclamable. A esos fines, la libertad bajo palabra sólo se otorgará cuando sirva al mejor interés de la sociedad y propicie la rehabilitación moral y económica del liberado, según la sana discreción de la Junta y los tribunales. *Quiles v. Del Valle*, 167 DPR 458, 475 (2006), que cita a *Pueblo v. Negrón Caldero*, 157 DPR 413 (2002); *Pueblo v. Zayas Rodríguez*, 147 DPR 530, 536 (1999).

De igual modo, **la Junta también tiene la autoridad para revocar el privilegio de libertad bajo palabra**. Previo a este ejercicio revocatorio, sin embargo, el Estado debe conceder al liberado unas garantías del debido proceso de ley. *Maldonado Elías v. González Rivera*, 118 DPR 260, 266 (1987). Ello así, porque el liberado "tiene una libertad condicionada o cualificada *que representa un interés de suficiente valor como para exigir las garantías mínimas del debido proceso de ley cuando se le intente despojar de éste*". (Cursivas en el original). *Quiles v. Del Valle*, *supra*.

El Artículo 5 de la Ley Núm. 118, 4 LPRA sec. 1505, establece el procedimiento de revocación que debe seguir la Junta. Dispone, entre otras cosas, que la Junta está autorizada a ordenar el arresto y la reclusión de cualquier liberado que transgreda las condiciones impuestas. Luego de la notificación de las infracciones imputadas y la celebración de una vista sumaria inicial, la Junta debe celebrar una vista final, dentro de sesenta días a partir de la fecha del arresto del liberado, para determinar si procede o no la revocación de la libertad bajo palabra. 4 LPRA sec. 1505. La disposición provee,

además, para que la Junta consolide ambas vistas, en el caso que así lo peticione la representación legal del liberado, entre otras razones. *Id.*

Para implantar las disposiciones de su ley habilitadora, la Junta adoptó el *Reglamento de la Junta de Libertad Bajo Palabra*, Reglamento Núm. 9232, de 18 de noviembre de 2020, que en su Artículo XIII establece las normas relacionadas a las personas que disfrutan de libertad condicionada. La norma referida abarca desde las vistas de seguimiento hasta los posibles resultados del proceso; a saber: amonestación, desestimación de la querella, modificación de las condiciones del Mandato o revocación del privilegio. Es meritorio mencionar que el Tribunal Supremo de Puerto Rico ha refrendado el procedimiento seguido por la Junta:

> [E]xiste en Puerto Rico un procedimiento válido para la revocación de la libertad bajo palabra. Este ha sido citado con aprobación en el caso *Martínez Torres v. Amaro Pérez,* [116 DPR 717 (1985)]. Allí se mencionó que el mismo incluye ambas garantías constitucionales mínimas tales como notificación y vista. El trámite estatutario confiere a la Junta la facultad para ordenar la investigación preliminar, ordenar el arresto sumario y **dilucidar finalmente en una vista el hecho de la violación a las condiciones fijadas en la orden que concedió la libertad, y luego decidir si dicha violación amerita revocar la orden anterior**. (Énfasis nuestro). *Maldonado Elías v. González Rivera, supra*, pág. 269.

Finalmente, en cuanto a la recomendación del Oficial Examinador, la Junta la evaluará, pero emitirá su propia determinación mediante la correspondiente resolución. Art. XIV, Sección 14.2 (D) del Reglamento Núm. 9232. La decisión de la Junta, formulada a base de la preponderancia de la prueba, se hará por escrito y contendrá las determinaciones de hecho, la evidencia en que la decisión se basó y las razones que justifican la revocación. 4 LPRA sec. 1505; véase, además, Art. XIV, Sección 14.1 (A) del Reglamento Núm. 9232.

**III.**

En la causa presente, el señor Rosado Rosado impugna la determinación de la Junta, por ésta no ser cónsona con las recomendaciones de la TSS y la Oficial Examinadora. Plantea que la Junta abusó de su discreción y alega que la totalidad de la prueba presentada *no sostiene una violación patente* a las condiciones establecidas en el Mandato. No le asiste la razón.

Luego de un examen detenido del expediente que revisamos, opinamos que la Junta realizó un ejercicio adecuado de la amplia discreción que tiene para revocar la libertad bajo palabra a cualquier persona sujeta a su jurisdicción, aun cuando la recomendación de la Oficial Examinadora haya sido distinta. Dicha recomendación no obliga a la Junta, mientras la decisión final adoptada encuentre apoyo en el expediente administrativo.

En este caso, la *Resolución* que examinamos está basada en la evidencia sustancial que la Junta relata. Como fue reseñado, la expareja del recurrente acudió a la Oficina del Programa de Comunidad del Departamento de Corrección y Rehabilitación, donde narró unos actos constitutivos de maltrato sicológico (insultos constantes) y físico (lanzarla por las escaleras) por parte del recurrente, con el agravante de que la mujer se encontraba en su quinto mes de gestación. D.M.C. solicitó una orden de protección por virtud de la Ley Núm. 54 y desistió de la misma, pues según expresó a la TSS, se encontraba bien y su interés era que el recurrente abandonara la residencia en común, lo cual se materializó. Ello, sin embargo, no borra los hechos cometidos ni minimizan su gravedad. Además, en nuestro ordenamiento jurídico, ni siquiera una absolución penal confiere inmunidad en el campo disciplinario administrativo por los mismos hechos, pues se trata de procedimientos con fines distintos, que requieren diferentes grados

de prueba. Véase, *Trib. Exam. Méd. v. Cañas Rivas*, 154 DPR 29, 37 (2001); *Reyes Salcedo v. Policía de P.R.*, 143 DPR 85, 97 (1997).

Ciertamente, durante el proceso ante la Junta, el recurrente no controvirtió los hechos consignados en el *Informe* de la TSS. Éstos no pueden considerarse *aislados*, toda vez que el señor Rosado Rosado ya cumplía sentencia por infringir otra disposición de la Ley Núm. 54. Contrario a lo alegado, los actos sí demuestran una *patente violación* a las Condiciones 9 y 12 del Mandato. Es decir, el despliegue de la conducta antijurídica del recurrente contra la perjudicada no responde a la buena conducta en la comunidad que debió observar. El recurrente tampoco se abstuvo de cometer hechos que tipifiquen delitos conforme con el ordenamiento legal. En este caso, luego de cumplir con las garantías mínimas que emanan del debido proceso de ley durante el proceso adjudicativo, la Junta revocó la libertad bajo palabra que disfrutaba el señor Rosado Rosado porque, a su juicio, consideró que el privilegio era incompatible, no sólo con el bienestar público, el de sus familiares o su expareja embarazada, sino con su propio bienestar, pues los actos decididamente constituyeron retrocesos en su proceso de rehabilitación.

En la causa de autos, no albergamos duda de que el recurrente no logró demostrar con evidencia suficiente que la Junta erró en su interpretación del Derecho, ni nos colocó en posición de concluir que las determinaciones de hecho reproducidas no estuviesen apoyadas por el expediente y la evidencia evaluada. Es sabido que, conforme con el criterio de razonabilidad y deferencia, no debemos intervenir con los enunciados fácticos de un organismo administrativo, siempre que éstos estén apoyados por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. En la causa presente, tampoco podemos concluir, ni el señor Rosado Rosado nos

ha persuadido, que la Junta haya actuado de forma irrazonable al revocarle el privilegio de libertad bajo palabra.

**IV.**

Por los fundamentos antes expuestos, se CONFIRMA la *Resolución* recurrida.

Se instruye a la Secretaria del Departamento de Corrección y Rehabilitación a entregar copia de esta *Sentencia* al señor Ernesto Rosado Rosado, en cualquier institución carcelaria donde éste se encuentre.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones