Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| JESÚS RICARDO UBRI CUSTODIO<br>Recurrido<br><br><br>v.<br><br><br>ALCAIDE DE LA INSTITUCIÓN<br>PENAL DE BAYAMÓN<br>Peticionario | KLCE202400472 | *Certiorari*<br>procedente del<br>Tribunal de<br>Primera Instancia,<br>Sala de San Juan<br><br>Crim. Núm.<br>K VI2023G0018<br>K VI2023G0019<br>K LA2023G0137<br>K LA2023G0138<br>K LA2023G0139 al<br>0140<br><br>Sobre:<br>ART. 93D CP 1er grado<br>ART. 6.20 Ley 168<br>ART. 6.14A Ley 168<br>(2cs) |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Aldebol Mora

*Per Curiam*

## SENTENCIA

En San Juan, Puerto Rico, a 30 de mayo de 2024.

Comparece el Ministerio Público mediante recurso de *certiorari* solicitando que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 15 de abril de 2024, acogiendo una solicitud de *habeas corpus* presentada por el Sr. Jesús Ricardo Ubri Custodio (Sr. Ubri Custodio o el recurrido).

## I.    Resumen del tracto procesal

Según surge del expediente ante nuestra consideración, el 26 de junio de 2023 se presentaron varias denuncias contra el Sr. Ubri Custodio por hechos alegadamente acaecidos el 12 de noviembre de 2022. Se le imputó una violación al Art. 93 D del Código Penal de Puerto Rico, 33 LPRA sec. 5142, y otra en modalidad de tentativa.  También, se le imputó violar los artículos 6.05, 6.14 (2c) y 6.20 de la Ley de Armas de Puerto Rico de 2020, 25 LPRA secs. 466d, sec. 466m y 466s de la Ley Núm. 168-2019, conocida

como la Ley de Armas de Puerto Rico de 2020 (Ley de Armas). Todos los delitos antes mencionados son graves.

El 8 de marzo de 2023, el TPI determinó causa probable para arresto[1] e impuso fianza. No obstante, esta no pudo ser prestada por el Sr. Ubri Custodio, por lo que fue arrestado e ingresado a la cárcel (sumariado) el 26 de marzo de 2023. Tras celebrada la vista preliminar[2] el 19 y 21 de abril de 2023, el TPI encontró causa probable de la comisión de todos los delitos imputados.

Posterior a que fueran presentadas las acusaciones, mediante moción al amparo de la Regla 64(n)(4) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64(n)(4), la defensa esgrimió infracción al término de juicio rápido, por la omisión del Ministerio Público de cumplir con el descubrimiento de prueba de manera oportuna.

A raíz de dicha petición, el 26 de junio de 2023, el TPI desestimó las acusaciones que pesaban en contra del Sr. Ubri Custodio, acogiendo su señalamiento de que se había violentado el término de juicio rápido para enjuiciar.  En consecuencia, el foro primario ordenó la excarcelación del recurrido.

Sin embargo, la excarcelación inicialmente aludida no se concretó por causa de que, el mismo día de ser esta ordenada, el Ministerio Público volvió a presentar las seis denuncias que pesaban contra este, lo que dio lugar a que se expidiera *Auto de prisión provisional*, hasta que pudiera prestar la fianza que se le impuso por causa de esta nueva presentación de cargos. No pudiendo prestar la fianza, el Sr. Ubri Custodio se mantuvo sumariado.

El 24 de agosto de 2023 se celebró la segunda Vista Preliminar, cuyo resultado fue la determinación de causa para acusar por todos los cargos.

De conformidad, el 28 de agosto de 2023, el Ministerio Público presentó las respectivas acusaciones. Luego, **el 12 de octubre de 2023,**

---

[1] Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6.
[2] Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, R. 23.

**inició el juicio** por jurado contra el Sr. Ubri Custodio, **al tomársele el juramento provisional a los miembros del panel de jurados**.

El juicio se extendió por casi veinte días de vistas celebradas, esparcidas entre el 18 de octubre de 2023, hasta el 6 de marzo de 2024. Sin embargo, a pesar de haber sido sometido el caso, y luego del jurado deliberar por varias horas, —en las cuales el Tribunal lo instruyó para que realizara esfuerzos para llegar a un acuerdo—, no pudo alcanzar un veredicto unánime. Esto dio lugar a que, a petición de la defensa, allanándose el Ministerio Público, el 6 de marzo de 2024 el foro recurrido ordenara la disolución del jurado, al amparo de la Regla 144 (c) de Procedimiento Criminal, 34 LPRA Ap. I, Regla 144 (c).

En vista de dicha determinación, el tribunal *a quo* emitió una *Resolución y orden* el 20 de marzo de 2024, solicitando al director del Negociado de Jurado designar de forma aleatoria tres paneles de jurados, previamente depurados para el juicio del recurrido, para iniciar los procesos de un segundo juicio. De esta forma, quedó señalada la *Selección de Jurados* para los días 9, 15 y 16 de abril de 2024.

A pesar del TPI haber pautado el 9 de abril de 2024 como la fecha para iniciar la selección de jurado, el juicio no inició ese día pues el foro primario dio lugar a la consideración de una petición de *habeas corpus* instada el día antes, 8 de abril de 2024, por la defensa. Como fundamento para dicha petición el recurrido arguyó que había transcurrido en exceso el término de seis meses que establece la Constitución de Puerto Rico, sin que fuera celebrado el juicio, de modo que procedía ordenar su excarcelación.

En respuesta, el TPI concedió a las partes hasta el 12 de abril de 2024 para que la defensa suplementara su solicitud de *habeas corpus*, y el Ministerio Público presentara escrito en oposición al *habeas corpus*.

Luego de haber examinado los escritos presentados por las partes, el 15 de abril de 2024, el foro recurrido emitió una fundamentada *Resolución*, declarando *Ha Lugar* la solicitud de *habeas corpus,* por tanto, ordenando la

excarcelación del Sr. Ubri Custodio. Al así decidir el foro *a quo* razonó, en parte, lo que sigue:

> Sin embargo, el 6 de marzo de 2024, se disolvió el jurado debido a que no se pudo lograr un acuerdo de unanimidad en el veredicto. Conforme a ello, terminado el juicio no se culminó el encausamiento del acusado, sino que continúa el mismo proceso en etapa de juicio. No tratándose de nuevas denuncias que inauguren un proceso penal nuevo y distinto, que permita el inicio de un nuevo término de seis meses de encarcelamiento, tenemos que computar los términos desde el 26 de junio de 2023, fecha en que se determinó causa probable para arresto en cuanto a los delitos de epígrafe. *Pueblo v. Díaz Alicea*, supra
>
> De otra parte, los términos no pueden quedar interrumpidos, por no concurrir un veredicto del jurado conforme a derecho que pusiera fin al encausamiento del Sr. Ubri, en cuanto a los delitos de epígrafe.

Cónsono con lo anterior, el TPI concluyó que el Sr. Ubri Custodio había estado encarcelado desde el 26 de junio de 2023, (fecha que, juzgó, marcó el inicio de un nuevo término de seis meses) por lo que habían transcurrido 294 días desde la determinación de causa probable para arresto, lo que excedía los seis meses de detención preventiva.

Inconforme, el 26 de abril de 2024 el Ministerio Público presentó el recurso de *certiorari* ante nuestra consideración, acompañado por una *Urgente Solicitud de Auxilio de Jurisdicción de un Habeas Corpus,* en el cual señaló los siguientes errores:

> **El Tribunal de Primera Instancia erró al ordenar la excarcelación del señor Ubri Custodio, mediante la concesión de un auto de *habeas corpus*, a pesar de que el término de detención preventiva no se había agotado.**
>
> **El Tribunal de Primera Instancia abusó de su discreción al rehusarse a tomarle el juramento preliminar al jurado el 9 de abril de 2024, pese a que, contando con la anuencia del señor Ubri Custodio, el inicio del juicio por jurado quedó pautado para esa fecha y el Ministerio Público solicitó oportunamente que se tomara este juramento.**

El 29 de abril de 2024 declaramos *Ha Lugar* la solicitud de auxilio de jurisdicción y ordenamos la paralización de la *Resolución* del TPI emitida el 15 de abril de 2024. Así también, le concedimos un término de cinco (5) días al Sr. Ubri Custodio para que se expresara sobre los méritos del recurso. El 3 de mayo de 2024 la defensa compareció mediante *Escrito en Cumplimiento*

*de Orden,* en el cual solicitó que declaremos No Ha Lugar la petición de *certiorari* y confirmemos la *Resolución* recurrida.

Al contar con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.    Derecho aplicable**

**A. La Detención preventiva**

i.

La Sección 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio, y la detención preventiva antes del juicio no excederá de seis meses. Art. II, § 11, Const. E.L.A., LPRA, Tomo 1. La referida cláusula constitucional tiene el propósito de asegurar la comparecencia del acusado a los procedimientos cuando éste no ha prestado fianza, mientras evita un castigo excesivo por un delito por el cual no ha sido juzgado. *Pueblo v. Pagán Medina,* 178 DPR 228, 236 (2010); *Ponce Ayala, Ex parte I,* 179 DPR 18, 22 (2010); *Pueblo v. Paonesa Arroyo,* 173 DPR 203, 210 (2008).   Esta protección se cimienta en el derecho fundamental a la presunción de inocencia. *Pueblo v. Pagán Medina,* 178 DPR 228, 238 (2010). De aquí que la cláusula de detención preventiva pretenda evitar que a una persona a quien ampara una presunción de inocencia sea restringida por el Estado en el ejercicio de su poder de custodia con el único propósito de hacerle comparecer a juicio. *Pueblo v. Pagán Medina,* supra, pág. 236.

De lo anterior se desprende que el juicio contra el acusado detenido preventivamente debe comenzar no más tarde de seis meses o, de lo contrario, el acusado será puesto en libertad sin que ello implique la desestimación de la causa. E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos,* Bogotá, Ed. Forum, 1995, Vol. II, págs. 333–334; *Pueblo v. Méndez Pérez,* 193 DPR 781, 787-788 (2015). Por tanto, una

vez transcurren los seis meses desde la detención sin haber sido sometido al juicio correspondiente, el detenido tiene derecho a ser excarcelado y permanecer en libertad por el resto del tiempo que dure el procedimiento en su contra. *Pueblo v. Paonesa Arroyo*, supra, en la pág. 211.

En *Pueblo v. Díaz Alicea*, 204 DPR 472, 483-484 (2020), el Tribunal Supremo se detuvo en consideraciones sobre cuándo procedía invocar el derecho constitucional de detención preventiva, zanjando como aclarada tal interrogante a través de la citación de uno de los delegados de la Convención Constituyente, en los siguientes términos:

> *Sr. BENÍTEZ: No, no. Precisamente quedó aclarado, señor Soto, al indicarse esta cláusula, "antes del juicio", que se establecía a los fines de dejar explícito el hecho de que la protección que aquí se quería establecer era la protección **para la persona que aún no había sido juzgada** y que **sin haber sido juzgada** en la actualidad a veces ocurría que estaba por más de seis meses en la cárcel, porque no había podido prestar fianza **o porque no se le había celebrado juicio**. <u>**Entonces lo que se ha querido subsanar es esta situación particular donde no ha mediado Juicio alguno**</u>. Esto lo que quiere decir es que en los casos **donde no ha mediado Juicio,** una persona no puede estar detenida en la cárcel por más de seis meses.* (Énfasis y subrayado provistos). Diario de Sesiones de la Convención Constituyente 1597 (1952).

> Además, ***la detención preventiva muere inmediatamente de celebrarse el Juicio***. (Énfasis provisto). Diario de Sesiones de la Convención Constituyente 1596 (1952)

Sobre lo mismo, el Tribunal Supremo abundó en la Opinión citada que, "del texto de la Constitución surge que el periodo de detención preventiva **se refiere al periodo anterior al Juicio**, en el cual el acusado se encuentra detenido preventivamente porque no prestó la fianza impuesta, **y se encuentra en espera de que se le celebre el Juicio**". (Énfasis provisto). *Pueblo v. Díaz Alicea*, supra, pág. 484. De lo que concluyó el mismo Foro que la consideración subyacente en el derecho a no ser detenido preventivamente por más de seis meses **es la incertidumbre que se le crea a la persona imputada de un delito**. Específicamente, se trata de proteger a una persona que ha sido detenida por más de seis meses **sin que haya comenzado el Juicio en su contra**, ante la incertidumbre de cuándo en

efecto comenzará el Juicio. No obstante, **<u>una vez iniciado el juicio, el elemento de la incertidumbre ya ha dejado de existir</u>**, pues no existe riesgo real de que el acusado permanezca detenido por tiempo indefinido. (Énfasis y subrayado provistos). *Íd*, págs. 488-489.

ii.

El término de detención preventiva comienza a transcurrir luego de que el Tribunal determina causa probable para el arresto. Ex Parte *Ponce Ayala*, 179 DPR 18 (2010). Es en este momento que el acusado tiene el derecho a quedar en libertad bajo fianza. Cuando el acusado no puede satisfacer la fianza que se le impone, queda sometido a detención preventiva durante el periodo anterior al juicio. Es decir, permanece sumariado en espera de que se celebre el proceso criminal en su contra. *Íd*. pág. 24. Así el término constitucional de detención preventiva de seis meses comienza a contar desde que el imputado es detenido preventivamente por no poder prestar la fianza requerida o por su revocación. *Íd*. pág., 27.

Cogido de la mano con lo anterior, en un *Voto de conformidad* suscrito por el Juez Asociado Martínez Torres[3] en *Vázquez Alejandro v. Supte. Bayamón*, 183 DPR 711, 712 (2011), fue resaltado, en lo pertinente, lo siguiente:

> En *Pueblo v. Camacho Delgado,* 175 DPR 1 (2008), resolvimos que cuando se desestima una acusación por delito grave, debido al incumplimiento de los términos dispuestos en la Regla 64(n)(5) de Procedimiento Criminal 34 LPRA Ap. II, si el Ministerio Público quiere reanudar el procesamiento del individuo afectado tiene que presentar una denuncia nueva y comenzar el proceso desde el inicio. Revocamos la norma dispuesta en *Pueblo v. Ortiz Díaz,* 95 DPR 244 (1967), que hasta entonces le permitía al fiscal proseguir el caso en la etapa previa a la desestimación, sin tener que presentar una denuncia nueva. Nos basamos en que "la norma establecida en *Pueblo v. Ortiz Díaz,* supra, no se ajusta a las necesidades de la sociedad donde vivimos actualmente ni responde a una concepción correcta de la intención de las Reglas de Procedimiento Criminal en esta materia". *Pueblo v. Camacho Delgado,* supra, págs. 19–20.

---

[3] Debemos resaltar que a este *Voto de Conformidad* se le unió la Juez Asociada Pabón Charneco, junto a los Jueces Asociados Kolthoff Caraballo, Rivera García y Feliberti Cintrón.

A renglón seguido, en el Voto bajo discusión el Juez Martínez Torres continuó expresando que:

> …*la desestimación de una causa tiene que entenderse como un evento que da por* terminada *la acción presentada ante los tribunales por el Ministerio Público. (Énfasis en el original.) Pueblo v. Camacho Delgado, supra, págs. 13–14.*
> *Así pues, está resuelto que el esquema procesal vigente es que la desestimación termina el encausamiento del acusado. Si el Ministerio Público presenta una nueva denuncia por delito grave, basada en los mismos hechos,* **inaugura un proceso penal nuevo y distinto**. <u>**Nace entonces un nuevo término de seis meses de encarcelamiento si no se presta una fianza**</u>, *dispuesto en el Art. II, Sec. 11 de la Constitución, L.P.R.A., Tomo 1.*
>
> *No puede decirse que el proceso es nuevo para unas cosas y para otras no. Esa distinción no está en la Constitución y es contraria a las reglas procesales. Se basa en una premisa incorrecta: evitar abrir las puertas al Ministerio Público para burlar la protección constitucional contra las detenciones preventivas en exceso de seis meses sin celebrarse juicio y encarcelar "indefinidamente" al ciudadano.* Íd. pág. 713. (Énfasis y subrayado provistos).

Finalmente, en *Pueblo v. Paonesa Arroyo*, supra, el Tribunal Supremo aclaró que, para efectos de la cláusula constitucional que prohíbe la detención preventiva en exceso de seis meses;

> … *resolvemos que es suficiente el "inicio" del juicio – antes de que se cumplan los seis meses de prisión preventiva – para evitar la excarcelación del acusado al amparo de la cláusula constitucional de detención preventiva. Esto es,* ***no se requiere la celebración de la totalidad del juicio dentro de los seis meses desde que el acusado fue detenido preventivamente***. (Énfasis provisto).

*Íd.*, pág. 212.

Así pues, conforme a *Paonesa Arroyo*, en el contexto de esta cláusula constitucional, **el juicio se entiende que comienza con la juramentación preliminar del jurado**, conforme a la Regla 119 de Procedimiento Criminal, 34 LPRA Ap. II, R. 119.

Es importante para el caso ante nuestra consideración destacar que en la referida Opinión nuestro Tribunal Supremo reconoció expresamente que su determinación pudiera promover que, en ocasiones, se lleve a cabo la juramentación preliminar del jurado *con el único propósito de asegurar*

*que el acusado permanezca detenido*. Sin embargo, o a pesar de esto, el alto Foro aclaró que: *Si bien ello puede suceder, el acusado no queda huérfano de remedios ya que, una vez se lleva a cabo la juramentación preliminar bajo el palio del derecho a un juicio rápido, el tribunal no se puede cruzar de brazos.* De esta forma, una dilación excesiva entre el *voir dire* y la juramentación definitiva del Jurado es una violación al derecho a juicio rápido que puede conllevar la desestimación de la acusación. Por tanto, de esto último ocurrir, ello podría dar lugar a una solicitud de desestimación por infracción al término de juicio rápido o la solicitud de un *mandamus* para que el tribunal señale la continuación de los procedimientos con celeridad, **pero no un *habeas corpus***. (Énfasis provisto). *Pueblo v. Paonesa Arroyo*, 173 DPR, a la págs. 215- 216.

### B. El *Habeas Corpus*

El auto de *habeas corpus* es un recurso extraordinario de naturaleza civil mediante el cual una persona que está privada ilegalmente de su libertad solicita de la autoridad judicial competente que investigue la causa de su detención. *Pueblo v. Díaz Alicea*, supra, en la pág. 13; *Quiles v. Del Valle*, 167 DPR 458, 466 (2006). El máximo Foro ha establecido que el auto de *habeas corpus* es un recurso extraordinario por lo que su uso debe estar limitado a situaciones excepcionales donde se hayan agotado todos los remedios ordinarios disponibles antes de recurrir a este recurso y para situaciones que en realidad lo ameriten. *Pueblo v. Díaz Alicea,* supra; *Quiles v. Del Valle,* supra, pág. 467; *Ortiz v. Alcaide Penitencia Estatal,* 131 DPR 849, 861 (1992).

### C. Regla 144 (c) de Procedimiento Criminal

Nuestro ordenamiento criminal reconoce el derecho constitucional de todo acusado a tener un juicio justo e imparcial y, en casos de delitos graves, a que su juicio sea ventilado ante un jurado imparcial. Véase Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. El derecho a tener un juicio justo e imparcial

no es otra cosa que el derecho del acusado a un juicio con las garantías del debido proceso de ley y la gama de derechos procesales que cobijan al acusado. E. L. Chiesa, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa,* 1era Ed., San Juan, Ediciones SITUM, 2018, pág. 54. Sin embargo, no se reconoce un derecho a un *juicio perfecto*. *Pueblo v. Santiago Lugo*, 134 DPR 623, 631 (1993). Véase: E. L. Chiesa, *op. cit.*, pág. 55. Por lo tanto, la Regla 144 de Procedimiento Criminal, 34 LPRA Ap. II, R. 144, contiene las instancias en que se puede disolver el jurado. En lo pertinente, la Regla 144 (c) de Procedimiento Criminal, 34 LPRA Ap. II, R. 144 (c), dispone que:

> El tribunal podrá ordenar la disolución del jurado antes del veredicto en los siguientes casos:
> (a) …
> (b) …
> (c) Si la deliberación se prolongare por un lapso de tiempo que el tribunal estimare suficiente para concluir de una manera clara y evidente no haber posibilidad de que el jurado pudiera llegar a un acuerdo.
> (d) …
> (e) …
> En todos los casos en que el jurado fuere disuelto según lo provisto en esta Regla, la causa podrá ser juzgada nuevamente.

Este último párrafo constituye una excepción a la prohibición de la Carta de Derechos de nuestra Constitución, que dice: "Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito", Art. II, Sec. 11. *Pueblo v. Guzmán Camacho*, 116 DPR 34, 41 (1984). La razón para permitir que un acusado pueda ser sometido a juicio en más de una ocasión cuando el jurado no puede ponerse de acuerdo tiene su fundamento en el interés que tiene el Estado en que todo proceso criminal termine en un fallo justo que vindique tanto los derechos del ciudadano como los de la sociedad. *Ríos Mora v. Tribunal Superior,* 95 DPR 117 (1967). No siempre es posible, dado lo complicado que resulta un proceso criminal, que todo juicio termine en un veredicto. Circunstancias ajenas al proceso mismo pueden intervenir para impedirlo. Resultaría injusto que no pudiera procesarse de nuevo al acusado. *Plard Fagundo v. Tribunal Superior*, 101 DPR 444 (1973).

### III.    Aplicación del derecho a los hechos

a.

El primer asunto que debemos atender versa sobre la determinación de la fecha en que comenzó a decursar el término de detención preventiva, el punto de partida de inicio del término de seis meses.

Al respecto, el Sr. Ubri Custodio originalmente planteó en la *Solicitud de Auto de Habeas Corpus* que instó ante el TPI, que se encontraba detenido de forma continua e ininterrumpida **desde el 26 de junio de 2023**, es decir, desde que se presentaron por segunda vez los cargos en su contra, posterior a que fueran desestimados por causa de infracción al término de juicio rápido. Sin embargo, contrario a ello, en su escrito ante nosotros, intitulado en *Cumplimiento de Orden,* el recurrido sostiene que se encuentra ingresado en prisión desde el *26 de marzo de 2023,* cuando originalmente se presentaron las denuncias en su contra, y debemos tomar esta fecha como la que marcó el inicio del término de seis meses de detención preventiva.

Replica a ello el Ministerio Público, que el término de detención preventiva comenzó a discurrir el *26 de junio de 2023,* una vez fueron presentados los cargos contra el Sr. Ubri Custodio por segunda vez, y este no pudo prestar la fianza que se le impuso.

Según acentuamos en la exposición del derecho, el término de detención preventiva comienza a transcurrir una vez el imputado queda detenido por no poder prestar la fianza impuesta lo cual ocurre, de ordinario, en la vista para determinar causa probable para arresto. *Rafael Ponce Ayala, Ex parte, Íd,* págs. 23-24.

Sobre lo anterior, valga observar que el profesor E.L. Chiesa Aponte afirma que, *si se declara con lugar una moción de desestimación (delito grave) al amparo de la regla 64 (n) la desestimación será sin perjuicio para un nuevo procedimiento, conforme la dispuesto en la regla 67,* Ernesto L. Chiesa

Aponte E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa,* San Juan, Ed. Situm, 2018, pág. 340; *Pueblo v. Méndez Pérez,* 193 DPR 781, 787-788 (2015). Tal expresión resulta cónsona con la del Tribunal Supremo en *Pueblo v. Martínez Hernández,* 208 DPR 872, 883, (2022), al afirmar que:

> En el descargo de nuestra función judicial, resolvimos en *Pueblo v. Carrión,* supra, que la desestimación por violación a los términos del juicio rápido acarrea la caída de los cargos contra el acusado y, en consecuencia, culmina la acción penal. Cinco (5) años más tarde, en *Pueblo v. Camacho Delgado,* 175 DPR 1, 11 (2008), pautamos que cuando se desestima la acción penal por violación al término del juicio rápido, **el Ministerio Público tiene la alternativa de iniciar <u>un nuevo proceso</u> con una nueva determinación de causa probable para arresto al amparo de la Regla 6 de Procedimiento Criminal,** *supra.* (Énfasis y subrayado provistos).

En consonancia con ello, a través del Voto de conformidad del Juez Asociado Martínez Torres en *Vázquez Alejandro v. Supte. Bayamón,* supra, ya se había adelantado que, *si el Ministerio Público presenta una nueva denuncia por delito grave, basada en los mismos hechos,* ***inaugura un proceso penal nuevo y distinto****.* ***<u>Nace entonces un nuevo término de seis meses de encarcelamiento si no se presta una fianza</u>****.* (Énfasis y subrayado provistos).

En definitiva, si la acción penal se desestima por violación al término del juicio rápido, el Ministerio Público puede iniciar un nuevo proceso con una nueva determinación de causa probable para el arresto. *Pueblo v. Camacho Delgado,* 175 DPR 1, 19 (2008), y ello supone o tiene como consecuencia que nazca un nuevo término de seis meses de encarcelamiento si no se presta la fianza, al decir del Voto de conformidad citado.

Cónsono con lo anterior, la desestimación del caso por violación a los términos de juicio rápido dispuestos en la Regla 64 (n) de Procedimiento Criminal, *supra,* no constituyó un impedimento para que el Ministerio Público presentara nuevas acusaciones contra el imputado, toda vez que

fue sin perjuicio, por tratarse de delitos graves. Iniciado un nuevo proceso penal en contra del imputado, con la presentación nuevamente de los cargos, por idénticos hechos, contra el Sr. Ubri Custodio, sin que este prestara la fianza impuesta, **ello marcó el inicio de un nuevo término de seis meses de detención preventiva**. *Ergo*, en este caso el término de seis meses de detención preventiva **comenzó a transcurrir a partir del *26 de junio de 2023***.

b.

Dispuesto lo anterior, debemos dilucidar cuál fue el efecto que tuvo el inicio del juicio contra el Sr. Ubri Custodio, el 12 de octubre de 2023, para efectos del discurrir del término de seis meses de detención preventiva, cuyo inicio ya pautamos fue el 26 de junio de 2023.

Antes de contestar la interrogante que precede, sirva dejar constancia de que juzgamos que, decretada la disolución del jurado, regresa el *estado de incertidumbre* que se le crea a la persona acusada, por causa de permanecer sumariado a la espera de que se inicie un segundo juicio en su contra. Sobre ello, apreciamos que el valor jurídico protegido a través del término de la detención preventiva para iniciar un primer juicio se mantiene, sin variación significativa, cuando el acusado está a la espera del inicio de un segundo juicio por causa de la disolución del jurado. En palabras llanas, mientras se inicie el segundo juicio, el acusado sumariado sufrirá el *estado de incertidumbre* que los constituyentes quisieron evitar a través de la imposición de un término para compelir el juicio.

Aclarado lo que antecede, y según lo destacamos en la exposición de derecho, el propósito de la detención preventiva es *proteger al imputado del elemento **de la incertidumbre del <u>inicio</u> del juicio***. (Énfasis y subrayado provistos). *Pueblo v. Díaz Alicea*, supra, pág. 488. De aquí que, **la detención preventiva se refiere al periodo <u>antes del juicio</u>**. (Énfasis y subrayado suplidos). *Pueblo v. Pagán Medina*, 178 DPR 228, 236 (2010); *Ruiz v. Alcaide*, 155 DPR 492, 502 (2001). Expresiones como estas muestran plena armonía

con las del constituyente al zanjar que *la detención preventiva **muera inmediatamente de celebrarse el juicio***. Diario de Sesiones de la Convención Contituyente 1597 (1952). Sabiendo, como subrayamos, que en *Pueblo v. Paonesa Arroyo*, supra, el Tribunal Supremo acabó cualquier controversia relacionada a que ***no*** *se requiere **la celebración de la totalidad del juicio** de los seis meses desde que el acusado fue detenido preventivamente*. (Énfasis provisto).

Es decir que, iniciado el juicio (con la juramentación preliminar del jurado), en ese mismo instante muere o se detiene el término de seis meses que sigue a la detención preventiva, en tanto *la protección constitucional cumple su cometido una vez es iniciado el juicio. Pueblo v. Paonesa*, supra. Razonamiento que necesariamente nos conduce a descartar la teoría de que, acontecida la disolución del jurado por efecto de la aplicación de la Regla 144(c) de Procedimiento Criminal, *supra*, se deba entender que el término de detención preventiva nunca pausó o se detuvo, y, al contrario, deba tenerse como ininterrumpido. En concreto, juzgamos que, para fines del cómputo de los seis meses de detención preventiva, el término que comprendió el inicio del juicio, el 12 de octubre de 2023, hasta el 6 de marzo de 2024, fecha en que se disolvió el jurado, **no** puede tomarse en consideración para una determinación sobre infracción a tal derecho constitucional[4].

A partir de lo cual, el Procurador General discute dos posibles teorías legales sobre qué ocurre con el término de detención preventiva una vez es decretada la disolución del jurado bajo la Regla 144 (c), supra. Por una parte, se promueve la teoría de que, decretada la disolución del jurado bajo la circunstancia descrita, comienza un nuevo término de seis meses de

---

[4] Al así concluir no es ni siquiera necesario referirnos a las instancias en que nuestro Tribunal Supremo ha reconocido que el término de seis meses puede ser interrumpido, (como cuando una persona se encuentra no procesable, *Pueblo v. Pagán Medina*, 178 DPR 228 (2010), pues, según explicado, en el caso ante nosotros aconteció el inicio de juicio, por lo que no se requiere explicaciones ulteriores para entender que en ese momento se paralizó el término de la detención preventiva.

detención preventiva a partir de esa fecha, en tanto, según el constituyente citado, el término de la detención preventiva *murió* una vez fue iniciado el juicio. Ello supondría en este caso concluir que el término de seis meses de detención preventiva inició el 6 de marzo de 2024, por lo que la solicitud de excarcelación mediante *auto de habeas corpus* instada por el recurrido fue prematura en exceso.

Por otra parte, también se discute la posibilidad de que la disolución del jurado en este caso tuvo como consecuencia la reactivación del término de detención preventiva, que había quedado paralizado o en suspenso a la fecha del inicio del juicio, es decir, el 12 de octubre de 2023. Es decir, que cabe concebir la disolución del jurado y el señalamiento de un nuevo juicio, para el 9 de abril de 2024, como parte de una misma acción penal contra el Sr. Ubri Custodio, distinguible del momento en que el Ministerio Público presentó nuevamente las denuncias en su contra, por los mismos delitos, al haberse desestimado el proceso criminal por infracción al derecho de juicio rápido. De ello se sigue, que la disolución del jurado no dio *paso a inaugurar un proceso penal nuevo y distinto[5]*, que causara o tuviera como resultado el nacimiento de un nuevo término de seis meses de encarcelamiento si no se presta la fianza. De ser acogido este planteamiento, se entendería que el término de detención preventiva quedó paralizado mientras transcurría el juicio llevado contra el Sr. Ubri Custodio, pero se reanudó el 6 de marzo de 2024, con la disolución del jurado.

En consecuencia, y continuando con este segundo argumento, el término de seis meses (180 días) de detención preventiva se comenzaría a computar el 26 de junio de 2023, fecha en que se determinó causa probable para el arresto y se impuso una fianza que no fue prestada por el Sr. Ubri Custodio, siendo sumariado, viéndose interrumpido el 12 de octubre de 2023, como consecuencia de la juramentación preliminar del jurado. En

---

[5] Esta formó parte de las expresiones del Juez Asociado Martínez Torres en su *Voto particular* en Vázquez *Alejandro v. Spte. Baymón*, supra, que citamos en la exposición de derecho.

consecuencia, del 26 de junio de 2023 al 12 de octubre de 2023 habrían pasado 108 días de detención preventiva. Finalmente, bajo esta misma lógica, se entendería que el 6 de marzo de 2024, con la disolución del jurado, el recurrido retornó a su condición de sumariado, reanudándose el término de detención preventiva, por lo tanto, los 72 días restantes expiraban el **17 de mayo de 2024**[6].

Visto lo anterior, y sin tener que decantarnos por uno u otro de los razonamientos expuestos, lo cierto es que, bajo ambos escenarios, de todos modos, reputamos la presentación del recurso de *habeas corpus* instado por el señor Ubri Custodio el 8 de abril de 2024 como prematuro. Ello, por cuanto, según dijimos, si se parte del entendido de que el término de detención preventiva de seis meses inició nuevamente por causa de la disolución del jurado el 6 de marzo de 2024, al momento de presentada la solicitud de *habeas corpus* no habría pasado ni siquiera un mes, de los seis meses de detención preventiva. Pero, de igual manera, si partimos del supuesto de que el término de seis meses de detención preventiva se reanudó el 6 de marzo de 2024, este no concluía sino hasta el **17 de mayo de 2024**, de manera que restaba más de un mes para que el TPI pudiera ordenar el inicio del segundo juicio y así eliminar el elemento de incertidumbre que se pretende lograr con el inicio del juicio.

Entonces, la explicación anterior nos coloca finalmente en posición de abordar el segundo señalamiento de error alzado por el Ministerio Público, a través del cual imputó abuso de discreción al TPI al no acceder a la petición de proceder con la juramentación preliminar del jurado el 9 de abril de 2024, según se había pautado. Según mencionamos en el tracto procesal, el foro primario se negó a juramentar preliminarmente al jurado el 9 de abril

---

[6] No obstante, por causa del Ministerio Publico presentar el presente recurso de *certiorari*, junto a la *Urgente Solicitud de Auxilio de Jurisdicción de un Habeas Corpus* impugnando la orden de excarcelación del Sr. Ubri Custodio, el 26 de abril de 2024, en esta fecha **ordenamos la paralización de los procesos**. Nótese que mientras los procedimientos se encuentran paralizados, el Ministerio Público se encuentra imposibilitado de proseguir la acción penal contra el Sr. Ubri Custodio.

de 2024, y con ello dar inicio al segundo juicio, porque el día antes, 8 de abril, la defensa presentó el referido auto de *habeas corpus*, y la juramentación del jurado tornaría la solicitud de excarcelación en *académica*. Se equivocó el foro primario al así actuar.

En primer término, acabamos de discutir que la presentación del auto de *habeas corpus* fue prematura, por lo que cabía denegarla de plano, lo que disponía de la preocupación sobre una presunta *academicidad* de dicha petición. Además, abusó de su discreción el tribunal *a quo* al no acceder a la juramentación preliminar del jurado, por cuanto el 9 de abril de 2024 fue una fecha establecida por el propio Tribunal para dicho propósito, y *el término constitucional de seis meses corre contra el Estado, a quien se le impone la obligación de iniciar con diligencia la celebración de los procedimientos adjudicativos*. O.E. Resumill de Sanfilippo, *Práctica Jurídica de Puerto Rico, Derecho Procesal Penal*, Tomo 2, pág. 248. De este modo, no cabía penalizar al Estado-Ministerio Público, retrasando la toma de juramentación preliminar del jurado, sin causa alguna, máxime cuando ello hubiese tenido el efecto de iniciar el juicio y acabar el estado de incertidumbre del recurrido.

Por último, e íntimamente relacionado con lo que antecede, antes de negarse a juramentar el jurado en la fecha prevista, el 9 de abril de 2024, el foro *a quo* debió sopesar la expresión de nuestro Tribunal Supremo en *Paonesa Arroyo* a los efectos de que:

> …aunque en ocasiones se lleve a cabo la juramentación preliminar del jurado *con el único propósito de asegurar que el acusado permanezca detenido*. Sin embargo, o a pesar de esto, el alto Foro aclaró que: *Si bien ello puede suceder, **el acusado no queda huérfano de remedios ya que, una vez se lleva a cabo la juramentación preliminar bajo el palio del derecho a un juicio rápido**, el tribunal no se puede cruzar de brazos.* De esta forma, una dilación excesiva entre el *voir dire* y la juramentación definitiva del Jurado es una violación al derecho a juicio rápido que puede conllevar la desestimación de la acusación. Por tanto, **de esto último ocurrir, ello podría dar lugar a una solicitud de desestimación por infracción al término de juicio rápido o la solicitud de un *mandamus* para que el tribunal señale la continuación de los procedimientos con celeridad**, **pero no un *habeas corpus***.

(Énfasis y subrayado provistos). *Pueblo v. Paonesa Arroyo*, págs. 215- 216.

En definitiva, basado en una petición de *Habeas Corpus* prematura, y bajo un argumento de presunta academicidad, el TPI postergó la juramentación del jurado cuyo efecto hubiese sido atajar el estado de incertidumbre con la iniciación del juicio. **Reiteramos, de haberse iniciado el juicio en la fecha que correspondía, la juramentación preliminar del jurado hubiese cesado el estado de incertidumbre creado por la disolución del jurado**.

### IV.  Parte dispositiva

Por los fundamentos antes expuestos, revocamos la *Resolución* del foro primario y ordenamos la devolución del caso para que se paute de inmediato la juramentación preliminar del jurado y con ello se inicie el juicio.

Notifíquese inmediatamente.

Lo acordó el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones