Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| RAMÓN DE LA CRUZ AYALA<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | KLRA202500162 | REVISIÓN JUDICIAL Procedente de la Junta de Libertad Bajo Palabra<br><br>JLBP Núm.: 147902<br><br>Sobre: Moción en Solicitud de Reconsideración (No Ha Lugar) |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de junio de 2025.

Comparece ante nos, por derecho propio e *in forma pauperis,*[1] Ramón De la Cruz Ayala ("Recurrente" o "señor De la Cruz") mediante un documento sin título clasificado como *revisión administrativa*, con denominación alfanumérica KLRA202500162, recibido el 17 de marzo de 2025. Mediante el aludido escrito, nos solicita la revisión de la *Resolución* emitida el 2 de octubre de 2024, notificada el 17 de diciembre de 2024 por la Junta de Libertad Bajo Palabra ("Junta" o "agencia recurrida"). Por virtud del aludido dictamen, la Junta determinó que el Recurrente no cualifica para el privilegio de libertad bajo palabra debido a que no tenía un plan de salida viable y al existir un *immigration detainer* en su contra.

---

[1] Conforme a la Regla 78 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 78, se le permite al Recurrente litigar *in forma pauperis*, debido a que a que se encuentra confinado en una institución carcelaria y no cuenta con los recursos económicos necesarios para sufragar los derechos arancelarios.

Número Identificador

SEN(RES)2025_____

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

**I.**

Surge del expediente que el señor De la Cruz, quien es miembro de la población correccional, cumple una condena de cuarenta y siete (47) años de reclusión por asesinato en segundo grado, tentativa al Artículo 406 de la Ley de Sustancia Controladas, 24 LPRA sec. 2406, y por violación al Artículo 277 del Código Penal de Puerto Rico, 33 LPRA sec. 5370, por el delito de tentativa de posesión e introducción de objetos a establecimientos penal.[2] Así pues, el 11 junio de 2023, el Recurrente fue referido a la Junta.[3]

Tras varias incidencias procesales, la vista de consideración ante la agencia recurrida se llevó a cabo el 23 de septiembre de 2024.[4] A esta compareció el Recurrente por derecho propio y consecuencia de su renuncia por escrito a tener representación legal.[5] Además, compareció la Técnica de Servicios Sociopenales, la señora Nilca Mateo.[6] Luego de haber examinado los documentos que obraban en el expediente del Recurrente, la Junta emitió *Resolución* el 2 de octubre de 2024, archivada el 4 de noviembre de 2024 y notificada al señor De la Cruz el 17 de diciembre de 2024.[7] Mediante la referida *Resolución,* la Junta formuló las siguientes determinaciones de hechos:

1. El peticionario cumple una sentencia de cuarenta y siete (47) años de reclusión por Asesinato en segundo grado (2 casos), Tentativa al artículo 406 de la Ley de Sustancias Controladas, Tentativa de posesión e introducción de objetos a establecimiento penal. Cumple tentativamente el 4 de junio de 2048.

2. El peticionario está clasificado en custodia de mediana seguridad desde el 30 de enero de 2019.

---

[2] Véase, Apéndice de la Junta, pág. 1.
[3] *Íd.*
[4] *Íd.*
[5] *Íd.*
[6] *Íd.*
[7] *Íd.*, págs. 1-5.

3. Al momento de la evaluación del expediente, surge que no cuenta con casos ante los tribunales, denuncias o querellas institucionales pendientes.

4. El peticionario tiene "Detainer" de Inmigración expedido el 1 de febrero de 2013, por lo que será deportado a su país de origen, República Dominicana, tan pronto extinga su sentencia.

5. Al peticionario le fue realizada la toma de muestra de ADN el 28 de marzo de 2018, conforme lo dispuesto en la Ley 175-1998, según enmendada.

6. El peticionario culminó el programa de Transformación de Patrones Adjetivos el 31 de mayo de 2017.

7. El peticionario culminó el programa de terapias psicológicas de la Sección del Programa de Evaluación y Asesoramiento (SPEA) el 31 de mayo de 2018. Cuenta con evaluación psicológica de 30 de junio de 2023.

8. El peticionario culminó las terapias de Control de Impulsos el 31 de mayo de 2017.

9. Se benefició del programa Reafirmando Mis Valores el 28 de enero de 2020.

10. El peticionario propuso residir con la abuela de su hija, Amancia Rodríguez, en Barrio Obrero, San Juan. Este hogar **no ha sido corroborado por** el Programa de Comunidad Metropolitano.

11. El peticionario propuso realizar labores en la Panadería Mallorca ubicada en San Juan. Las facilidades de este lugar no fueron visitadas por lo que no podemos determinar si son viables o no.

12. La candidata a amiga consejera, Salma Pérez Medina, reside en Trujillo Alto y está dispuesta a ejercer dicha función (Énfasis nuestro).[8]

Cónsono con estas determinaciones, la agencia recurrida determinó denegar el privilegio de libertad bajo palabra al Recurrente. Fundamentó su dictamen haciendo alusión a que el señor De la Cruz contenía un *detainer* de inmigración. Sobre este particular la Junta razonó:

La agencia federal U. S Immigration and Customs Enforcement (ICE) procura que, a través de la emisión de un *detainer* la agencia de orden público que tenga en su custodia a un individuo que pueda ser removible y sea un peligro para los ciudadanos, les notifique en primera instancia a ellos y le provea un tiempo razonable para que puedan asumir la custodia del individuo objeto del *detainer.* Ello, con el propósito de evitar que ofensores criminales sean liberados a las calles y así poder llevar a cabo su misión de proteger la seguridad pública. El hecho de que la Junta tome la decisión de concederle al peticionario la libertad bajo palabra burlaría los propósitos del ICE de proteger la seguridad pública a través de los *detainer* de inmigración.[9]

---

[8] *Íd.*, págs. 1-2.
[9] *Íd.*, pág. 4.

Insatisfecho con este resultado, el 16 de enero de 2025, el Recurrente solicitó reconsideración.[10] Examinado este escrito, el 27 de enero de 2024, notificado el 28 de enero del mismo año, la Junta declaró *No Ha Lugar* la reconsideración instada.[11]

Inconforme aun, el 17 de marzo de 2025, esta Curia recibió el recurso de epígrafe en el cual el Recurrente formuló los siguientes señalamientos de error:

> Erró la Junta de Libertad Bajo Palabra al violar el debido procedimiento de ley del peticionario denegando el otorgamiento del privilegio de libertad bajo palabra sin considerar la totalidad de los hechos relevantes que constaban en el expediente y que existen en el expediente criminal y social.
> Erró la J.L.B.P. al no cumplir con las garantías procesales establecidas en el Reglamento 9232, y el reglamento 9603.

El 2 de abril de 2025 esta Curia emitió *Resolución* en la cual le concedió a la Junta un término de treinta (30) días para que expusiera su posición sobre el recurso. Ulteriormente, el 5 de mayo de 2025, la agencia recurrida, por conducto de la Oficina del Procurador General de Puerto Rico presentó *Solicitud de Breve Término Adicional,* mediante la cual solicitó una prórroga de cinco (5) días para presentar su escrito. Así las cosas, el 7 de mayo de 2025, este Tribunal le concedió hasta el 12 de mayo de 2025 para que la agencia recurrida expusiera su postura en cuanto al Recurso. Oportunamente, el 12 de mayo de 2025, la Junta presentó *Escrito en Cumplimiento de Resolución,* mediante la cual, esencialmente adujo que correspondía confirmar el dictamen recurrido, pues el recurrido no presentó prueba suficiente para rebatir la presunción de corrección de la determinación administrativa. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia ante nuestra consideración.

---

[10] *Íd.*, págs. 6-7.
[11] *Íd.*, págs. 8-9.

## II.

### A. Estándar de Revisión Judicial de Determinaciones Administrativa

"Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado". *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 215 DPR_(2025) 2025 TSPR 70, pág. 10. Las determinaciones de una agencia administrativa gozan de una presunción de legalidad y corrección. *Transp. Sonnell v. Jta. Subastas ACT,* 214 DPR___ (2024) 2024 TSPR 70, pág. 16. Al evaluar una determinación administrativa, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank.,* 214 DPR___ ,2024 TSPR 70, pág. 9(2024).

Ahora bien, en cuanto las determinaciones de derecho, nuestra más Alta Curia en *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* 215 DPR___, 2025 TSPR 56 (2025), incorporó la doctrina discutida en *Loper Bright Enterprises v. Raimondo,* ___ U.S. ___, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), en cuanto a que los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. En aquella ocasión, nuestro Máximo Foro concluyó que "la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales" por lo cual enfatizó que, "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el

deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos". *Íd.*, pág. 33.

### B. *La Junta de Libertad Bajo Palabra*

La Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación fue creada al amparo de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 LPRA, sec. 1501 *et seq.*, ("Ley Núm. 118"). Esta legislación le otorgó la facultad a la Junta a decretar la libertad bajo palabra a una persona recluida en las instituciones correccionales de Puerto Rico, siempre y cuando se cumplan con los requisitos dispuesto por ley y no se trate de alguno de los delitos excluidos de este beneficio. 4 LPRA sec. 1503 (Supl. 2025). El decreto de libertad bajo palabra autoriza que una persona que haya sido convicta y sentenciada a cumplir una condena de reclusión cumpla la última parte de su sentencia fuera de la institución correccional, sujeto al cumplimiento de las condiciones impuestas por la Junta. *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987).

A su vez, nuestro más Alto Foro ha resuelto que la libertad bajo palabra no es un derecho sino más bien es un privilegio. *R Quiles v. Del Valle,* 167 DPR 458, 475 (2006). Por tanto, la concesión del aludido privilegio recae en la sana discreción de tribunal o de la Junta. *Íd.* Asimismo, la libertad bajo palabra se otorga a la persona confinada que satisfaga ciertos criterios personales y de conducta, sujeto al mejor interés de la sociedad y que las medidas logren la rehabilitación moral y económica del confinado beneficiado. *Rivera Beltrán v. Junta de Libertad Bajo Palabra*, 169 DPR 903, 905 (2007) (Sentencia).

Concerniente al procedimiento para la concesión del privilegio de libertad bajo palabra, la Ley Núm. 118, *supra* establece que el miembro de la población correccional que cumpla con los requisitos establecidos por la Junta mediante reglamento o

ley, que muestre un alto grado de rehabilitación y que no represente un riesgo para la sociedad podrá solicitar formalmente el privilegio. Una vez recibida la solicitud, la Junta referirá la evaluación de esta a uno de los paneles de trámite y adjudicación. Ley Núm. 118, *supra*, sec. 1503c. En este proceso de evaluación, la Junta tendrá discreción para tomar en consideración diversos criterios para otorgar el privilegio, los cuales son los siguientes:

(1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

(2) Las veces que el confinado haya sido convicto y sentenciado.

(3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) El historial de ajuste institucional y del historial social y psicológico del confinado, preparado por la Administración de Corrección y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho. Ley Núm. 118, *supra,* 4 LPRA sec. 1503d.

Por otro lado, para poder implementar las disposiciones de la Ley Núm. 118, *supra*, la Junta adoptó el *Reglamento de la Junta de Libertad Bajo Palabra*, Reglamento Número 9232 de 18 de noviembre de 2020. En el Art. X del aludido reglamento se enuncian los criterios que la Junta deberá considerar al evaluar la solicitud de libertad bajo palabra de un confinado. Específicamente, la Sección 10.1 detalla ciertos criterios de

elegibilidad, entre los cuales destacamos los recogidos en la

sección 10.1 (B)(1)(f)(i):

> A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.
>
> B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:

1. Historial delictivo

[...]

f. Si existe una orden de detención ("detainer") emitida por cualquier estado de los Estados Unidos, el tribunal federal, el gobierno federal y/o de! Servicio de Inmigración y Naturalización.

> i. El sólo hecho de que exista una orden de detención ("detainer") contra un peticionario no será fundamento para denegar la libertad bajo palabra siempre y cuando el peticionario cumpla con todos los demás criterios.

Por otro lado, en, la Sección 10.1 B (7) establece todo lo

concerniente al plan de salida que debe someterse ante la Junta:

7. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

> a. El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.
>
> b. Cuando el plan de salida propuesto sea fuera de la jurisdicción de Puerto Rico:
>
> [...]
>
> d. Oferta de empleo y/o estudio
>
> > i. Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios adiestramiento vocacional o estudio y trabajo.
>
> [...]
>
> e. Residencia
>
> i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.
>
> ii. De proponer una residencia, el peticionario proveerá el nombre completo y número de teléfono de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.
>
> iii. De proponer una residencia propia y no contar con recurso familiar, deberá presentar como recurso

y apoyo el amigo consejero o alguna persona que le pueda servir de apoyo, aunque no resida con el peticionario. Deberá presentar el nombre completo de esa persona, número de teléfono y correo electrónico. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone recibir el peticionario de serle concedida la libertad bajo palabra.

iv. Si el peticionario interesa ingresar a un programa interno, tendrá que presentar la carta de aceptación del programa, así como proponer una residencia alterna en la cual disfrutará de los pases, en los casos que aplique. Dicha residencia alterna será corroborada para determinar su viabilidad. Si la residencia alterna no resulta viable, el peticionario no podrá disfrutar de pases hasta tanto no provea una residencia alterna viable, y así lo autorice la Junta.

iv. Para determinar si la vivienda propuesta es viable, la Junta considerará:

(a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.

(b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.

(c) Condición de la planta física de la residencia y cantidad de habitantes de la misma.

(d) Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito.

(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.

(f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

### III.

En el presente recurso, el Recurrente solicita que revisemos la *Resolución* dictada el 2 de octubre de 2024, notificada el 17 de diciembre del mismo año por la Junta. El fundamento de la agencia recurrida respondió a que, tras realizar un análisis del expediente del Recurrente, determinó no conceder el privilegio de libertad bajo palabra al señor De la Cruz, pues estaban presentes factores de peligrosidad. En particular, el Recurrente sostiene que, conforme al *Reglamento de la Junta de Libertad Bajo Palabra,*

Reglamento Número 9232, *supra*, la Junta no podía denegar el privilegio solicitado por el mero hecho de que el solicitante tuviera un *deteiner*.

No empece a lo anterior, la agencia recurrida fundamentó su determinación de denegarle al Recurrente el privilegio de libertad bajo palabra sopesando varios factores. En primer lugar, la Junta puntualizó que el señor De la Cruz posee un *Inmigration Dateiner* por parte de *U.S. Immigration and Customs Enforcement* ("ICE").[12] De esta forma, la Junta concluyó que ello, tenía la consecuencia de que el Recurrente no podía proveer un plan de salida viable en áreas de vivienda y oferta de empleo, pues un inmigrante que no está autorizado a estar dentro nuestra jurisdicción no puede ser reclutado para empleo, ni tener asilo por parte de un ciudadano o residente de Estados Unidos conforme lo dispone los estatutos federales.[13]

Cónsono con lo anteriormente esbozado, del expediente se desprende que la Junta evaluó varios factores conforme las circunstancias del Recurrente. Asimismo, fundamentó su

---

[12] *Íd.*, págs. 10-14.
[13] La determinación recurrida hizo referencia al 8 U.S. Code sec. 1324, el cual en lo pertinente dispone:

> **(A)** Any person who—
> [...]
> **(iii)** knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

Además, la resolución recurrida citó el 8 U.S. Code sec. 1324a, el cual establece:

> **(a) Making employment of unauthorized aliens unlawful**
> **(1) In general**
> It is unlawful for a person or other entity—
> **(A)** to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3)) with respect to such employment, or
> **(B)**
> **(i)** to hire for employment in the United States an individual without complying with the requirements of subsection (b) or (ii) if the person or entity is an agricultural association, agricultural employer, or farm labor contractor (as defined in section 1802 of title 29), to hire, or to recruit or refer for a fee, for employment in the United States an individual without complying with the requirements of subsection (b).

determinación de denegar el privilegio de libertad bajo palabra por virtud de la existencia de un *deteiner* que pesa contra el Recurrente y de la misma forma, por insuficiencia del plan de salida, siendo este último un requisito indispensable para la concesión del remedio. Es decir, fueron varios los elementos que concurrieron para que la Junta tomara su determinación.

Luego de realizar un examen minucioso del expediente ante nuestra consideración, coincidimos con el criterio de la agencia recurrida. Por consiguiente, ante la ausencia de prueba que demostrara que la Junta actuara de forma arbitraria, irrazonable o ilegal, corresponde otorgarle deferencia a la determinación de la agencia recurrida y por tanto confirmar el dictamen de la Junta.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones